QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (pro hac vice forthcoming)
alexspiro@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
Tel: 212 849 7000
Fax: 212 849 7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Mari F. Henderson (Bar No. 307693)
marihenderson@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Tel: 213 443 3000
Fax: 213 443 3100

TUCKER ELLIS LLP
Matthew A. Boyd (pro hac vice forthcoming)
matthew.boyd@tuckerellis.com
Ndubisi A. Ezeolu (Bar No. 256834)
ndubisi.ezeolu@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071
Tel: 213.430.3400
Fax: 213.430.3409

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| DEREK DIXON, an individual | ) Case No. 2:25-cv-09112 |
| Plaintiff, | ) |
| v. | ) **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| TYLER PERRY, an individual; TPS PRODUCTION SERVICES, LLC, a Limited Liability Company; AND ACTION, LLC, a Limited Liability Company; and DOES 1 through 50, inclusive | ) |
| | ) Date: December 5, 2025 |
| | ) Time: 10:00 a.m. |
| | ) |
| | ) Judge: Not Yet Assigned |
| | ) |
| Defendants. | ) Complaint filed: June 13, 2025 |
| | Trial date: Not set |

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

Please take notice that, on December 5, 2025, at 10:00 a.m., or as soon thereafter as this Motion may be heard, at the First Street U.S. Courthouse, 350 W 1st Street, Suite 4311, Los Angeles, CA 90012,[1] Defendants Tyler Perry, TPS Production Services, LLC, and And Action LLC, will move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), 28 U.S.C. §§ 1406(a), 1404(a), and the doctrine of *forum non conveniens*, or alternatively, to transfer this action to the U.S. District Court for the Northern District of Georgia. In support of this Motion, Defendants rely on the arguments and authority set forth in the accompanying Memorandum of Points and Authorities, the Declarations of Robyne Gordon, Tyler Perry, and Alex Bergjans, the entire Court record, and all arguments that may be presented to the Court.

### Statement of Compliance with Local Rule 7-3

On September 23, 24 and 25, 2025 Defendants' counsel contacted Plaintiff's counsel in a good faith attempt to resolve the issues raised in this Motion. *See* Declaration of Alex Bergjans, ¶¶ 2-4. The parties were unable to resolve the dispute, thus necessitating the filing of this Motion.

Date: October 1, 2025.


**TUCKER ELLIS, LLP**


By: */s/ Ndubisi Ezeolu*
    Ndubisi A. Ezeolu

*Attorneys for Defendants*

---

[1] At the time of filing, this matter has not yet been assigned to a Judge. Accordingly, Defendants have noticed the hearing for a date and time convenient to both counsel for Defendants and Plaintiff. Defendants recognize that the date and location may be subject to change and will issue an Amended Notice as necessary once a Judge has been assigned to this case.

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

TUCKER ELLIS LLP

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

3

## **TABLE OF CONTENTS**

4

5

I.    INTRODUCTION .................................................................................... 7

6

II.    RELEVANT FACTS AND PROCEDURAL BACKGROUND ........................ 7

7

A.    Defendant Tyler Perry ................................................................ 7

8

B.    TProd and And Action................................................................ 8

9

C.    Dixon's Allegations .................................................................... 8

10

III.    ARGUMENT ....................................................................................... 10

12

A.    The Court Should Dismiss this Action for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2). ..................... 11

14

1.    The Court Lacks General Personal Jurisdiction Over Defendants.................................................................... 12

2.    The Court Also Lacks Specific Jurisdiction Because the Dispute Does Not Arise or Relate to Defendants' Contacts with California................................................. 14

18

B.    Alternatively, the Case Should Be Dismissed for Improper Venue Under Fed. R. Civ. P. 12(b)(3) and U.S.C. § 1406(a). ................. 18

20

C.    Solely in the Alternative, this Case Should Be Transferred to Georgia Under 28 U.S.C. §§1406 or 1404. ................................ 20

1.    Georgia Courts Are More Familiar with Georgia Law................... 22

2.    "Local interests" Lie in Georgia. ..................................... 23

3.    California Courts Are More Congested. ........................... 24

IV.    CONCLUSION..................................................................................... 24

TUCKER ELLIS LLP

27

28

3

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Bank of Am., N.A.*, 2006 WL 889491 (N.D. Cal. Apr. 5, 2006)....................14

*Antaris Techs., Inc. v. Matthews*, 2025 WL 1939868 (N.D. Cal. July 15, 2025) .........................................................................................................................15

*Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320 (9th Cir. 1996) .......................................21

*Atl. Marine Const.*, 571 U.S. 49 (2013) ....................................................................23, 24

*Bloom v. Express Servs. Inc.*, 2011 WL 1481402 (N.D. Cal. Apr. 19, 2011) ............23, 26

*BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402 (2017) ......................................................14, 15

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) .......................................................13

*Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir. 1996) ..................................25

*Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255 (2017)........................................13

*Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991) .....................................................19

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir.2011) ......................16

*Costlow v. Weeks*, 790 F.2d 1486 (9th Cir. 1986)............................................................23

*Daimler AG v. Bauman,* 571 U.S. 117 (2014).................................................................15

*Dangoor v. Peterson's Stampede Dodge Chrysler Jeep, LLC*, 2019 WL 6357252 (C.D. Cal. Aug. 8, 2019) ...........................................................................18

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977).....................13

*Davidson v. Korman*, 2010 WL 3515760 (N.D. Cal. Sept. 8, 2010)................................22

*Dish Network, LLC v. Jadoo TV, Inc.*, 2020 WL 6536659 (C.D. Cal. Mar. 16, 2020) ...........................................................................................................................20

*Flake v. Medline Indus., Inc.*, 882 F. Supp. 947 (E.D. Cal. 1995) ..................................21

*Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500 (9th Cir. 1995) ...........................................................................................................24, 25

*Gonsalves v. Infosys Techs., LTD.*, 2010 WL 1854146 (N.D. Cal. May 6,

TUCKER ELLIS LLP

4

TUCKER ELLIS LLP

2010) ..................................................................................................................24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ......................15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)......................14

*Hunt v. Ameritas Life Ins. Corps.*, 2019 WL 7666755 (N.D. Cal. Sept. 25, 2019) .................................................................................................................23

*IBM v. Bajorek*, 191 F.3d 1033 (9th Cir. Cal. 1999) .........................................................25

*In re Boon Glob. Ltd.*, 923 F.3d 643 (9th Cir. 2019).........................................................13

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) .............................................13

*Ivy Bridge Univ., LLC v. Higher Learning Comm'n,* 2015 WL 6555428 (N.D. Cal. Oct. 28, 2015) ...........................................................................................19

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001) ...................................14, 15

*Lapachet v. Cal. Forensic Med. Grp., Inc.*, 2017 WL 3917209 (N.D. Cal. Sept. 7, 2017) .................................................................................................23

*Loza v. Intel Americas, Inc.*, 2020 WL 7625480 (N.D. Cal. Dec. 22, 2020) ...................24

*LP Digital Sols. v. Signifi Sols., Inc.*, 921 F. Supp. 2d 997 (C.D. Cal. 2013) .................21

*M/S Bremen v. Zapata Off-Shore, Co.*, 407 U.S. 1 (1972)..........................................21, 22

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988) ..........................21

*Martinez v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014) .....................................14, 16

*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010)....................................................25

*Olinick v. BMG Entertainment*, 138 Cal. App. 4th 1286 (2006)......................................25

*Paparella v. Plume Design, Inc.*, 2022 WL 2915706 (N.D. Cal. July 25, 2022) .................................................................................................................24

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ............................................13

*Peterson v. Kennedy*, 771 F.2d 1244 (9th Cir. 1985) .................................................16, 18

*Picot v. Weston*, 780 F. 3d 1206 (9th Cir. 2015) ........................................................16, 17

*Ramos v. Molina Healthcare, Inc.*, 2012 WL 3104849 (C.D. Cal. July 27,

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

2012) ...........................................................................................................21

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) .......................................13

*Schott v. Ivy Asset Mgmt. Corp.*, 2010 WL 4117467 (N.D. Cal. Oct. 19, 2010).................26

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ..........13, 17, 19

*Shute v. Carnival Cruise Lines*, 897 F. 2d 377 (9th Cir. 1990) ........................................19

*Spradlin v. Lear Siegler Mgmt.*, 926 F.2d 865 (9th Cir. 1991) .........................................21

*Terracom v. Valley National Bank*, 49 F. 3d 555 (9th Cir. 1995) .....................................20

*Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A. (Illinois), Inc.*, 118 F.
    Supp. 2d 997 (C.D. Cal. 2000) ................................................................21

*Walden v. Fiore*, 571 U.S. 277 (2014).......................................................................18, 19

*Wood v. Santa Barbara Chamber of Commerce*, 705 F.2d 1515 (9th Cir.
    1983) ........................................................................................................22

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)...........................13, 18

**Statutes**

28 U.S.C. § 1404(a) ............................................................................2, 12, 22, 23

28 U.S.C. § 1406(a) .................................................................................2, 20, 22

Cal. Lab. Code § 925 ......................................................................................22

Fed. R. Civ. P. 12(b)(2).........................................................................2, 12, 13, 20

Fed. R. Civ. P. 12(b)(3).....................................................................................passim

Fed. R. Civ. P. 12(b)(6)........................................................................................23

Gov. Code § 12965(b)...........................................................................................23

**Other Authorities**

*Table C-3—U.S. District Courts–Civil Federal Judicial Caseload Statistics*,
    United States Courts (Mar. 31, 2025) https://www.uscourts.gov/data-
    news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-3 ........................26

TUCKER ELLIS LLP

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

# I.    INTRODUCTION

Dixon's theatrically-pled Complaint seems like something that belongs in Hollywood. But there is no legal basis under which a California court could exercise personal jurisdiction over the Defendants. All Defendants are Georgia citizens and do not transact business in California – much less any business that relates to this lawsuit. Plaintiff performed work for Defendants TPS Production Services, LLC ("TProd") or And Action, LLC ("And Action") only in Georgia; all of the alleged incidents giving rise to Dixon's claims purportedly took place outside of California; and all contracts between the parties contain Georgia choice of law and forum selection clauses.

Dixon is forum shopping. The *only* (yet irrelevant) connection between this dispute and California is that Dixon moved there in 2023, over a year *after* the last incident of alleged "assault." Dixon cannot come close to meeting his burden of proving personal jurisdiction exists over any Defendant. Because this case involves inexcusable forum shopping, the Court should dismiss it. Alternatively, the case should be transferred to the appropriate forum—the U.S. District Court for the Northern District of Georgia.

# II.    RELEVANT FACTS AND PROCEDURAL BACKGROUND

## A.    Defendant Tyler Perry

Tyler Perry is a director, producer, screenwriter, and actor for television, stage, and film. *See* Dkt. 1-5, Declaration of Tyler Perry ("Perry Decl."), ¶ 2. He has lived in Georgia for over thirty years and maintains his permanent residence there. *Id.* Mr. Perry intends to reside, return, and remain indefinitely in Georgia. *Id.* ¶ 4. He is registered to vote in Georgia and he has a Georgia driver's license. *Id*. Although Mr. Perry owns property in other states, including a house in California, he does not use (and has never used) any of these properties as his permanent residence. *Id.* ¶ 3. Except for two cast trips to the Bahamas and Europe and one or two visits to Mr. Perry's vacation house in Jackson, Wyoming, ***all*** of Dixon's alleged in-person encounters with Mr. Perry were in Georgia. *Id.* ¶ 6. Mr. Perry had no relevant interactions with Dixon in California, *id.*, and Dixon pleads no such contacts, *see generally* Dkt. 1-1 ("Compl.").

Tucker Ellis LLP

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

**B.    TProd and And Action**

TProd, a media production company, is a Georgia LLC headquartered in Georgia. *See* Declaration of Robyne Gordon ("Gordon Decl."), ¶ 5. TProd is a wholly-owned subsidiary of TPS Production Holding, LLC, which is a Delaware LLC headquartered in Georgia. *Id*. TPS Production Holding, LLC is a wholly owned subsidiary of TPS Holdings Group, LLC, which is a Delaware LLC headquartered in Georgia. *Id*. ¶ 6. TPS Holdings Group has two owners/members: (1) Mr. Perry (a citizen of Georgia); and (2) Perry Well Holding Company, which is a Georgia corporation with its principal place of business in Georgia. *Id*. TProd does not engage in business in California. *Id*. ¶ 8.

And Action dissolved in 2023. *Id*. ¶ 7. It formerly was engaged in the same business as TProd and had the same ultimate ownership structure. *Id*. It conducted no business in California. *Id*. ¶ 9.

Dixon was an independent contractor for And Action and then TProd in Georgia between 2019 and 2024, working as an actor in the television series *Ruthless* and *The Oval*, the film, *Joy Ridge/Finding Joy*, and the pilot episode for a potential series called *Losing It*. *Id*. ¶¶ 10-13; *see also id.*, Exhibits A-E. All were filmed at Tyler Perry Studios in Atlanta, Georgia. *Id*. ¶ 13. Dixon did not perform work for any Defendant outside of Georgia. *Id*.

Each time Dixon contracted for a role with And Action or TProd, Dixon executed a Performer Agreement. *Id*. ¶ 14. All agreements contain Georgia choice of law and Georgia forum selection clauses. *See, id*., Exhibits B-E.

**C.    Dixon's Allegations**

Defendants deny Dixon's allegations. The Complaint distorts reality and mischaracterizes a platonic friendship that, as it turns out, Dixon ultimately cultivated for personal financial gain. Notwithstanding, and without admitting the truth of Dixon's concocted claims, the ***allegations*** relevant to this Motion follow.

Mr. Perry met Dixon in 2019, when Dixon was living in Georgia and working for an event company that coordinated functions for Mr. Perry in Georgia. Compl., ¶¶ 50-52. Dixon expressed an interest in acting and Mr. Perry helped him secure a minor role in the

TUCKER ELLIS LLP

television series *Ruthless*, appearing in a single episode filmed in Georgia in 2019. *Id*. ¶¶ 57, 59; Gordon Decl., ¶¶ 10, 13.

In January 2020, Dixon attended a party at Mr. Perry's Georgia residence and spent the night in a guest bedroom. Compl., ¶¶ 65-69. Dixon claims Mr. Perry tried to get into bed with him ("Alleged January 2020 incident"). *Id.* Despite this, Dixon voluntarily came to Mr. Perry's home in Georgia two months later. *Id*. ¶¶ 81-85, 89-91. During this March 2020 visit, Dixon claims Mr. Perry asked Dixon "sexually charged questions" and grabbed Dixon by the throat in a "sexually aggressive manner" ("Alleged March 2020 incident"). *Id*. ¶¶ 89-91.

Dixon was cast in Season 2 of *The Oval*, also filmed in Georgia. *Id*. ¶¶ 81-83; Gordon Decl., ¶ 13. In August 2020, during the COVID pandemic, cast members quarantined and temporarily resided at the Tyler Perry Studios campus in Georgia so they could film. Compl., ¶ 106. Dixon claims that Mr. Perry "dropped off alcohol at his house," and coerced him to imbibe during phone conversations with Mr. Perry. *Id*. ¶ 100. Dixon claims that later he went to Mr. Perry's trailer for drinks, and that Mr. Perry made sexual advances and tried to grope Plaintiff's buttocks ("Alleged August 2020 Incident"). *Id*. ¶¶ 106, 115-19.

About a month later, Dixon voluntarily accompanied Mr. Perry and other cast members on a trip to the Bahamas, where he claims Mr. Perry made sexual advances towards him and allegedly tried to grope him ("Alleged October 2020 Incident"). *Id*. ¶¶ 123-126.

In early 2021, Dixon acted in Season 3 of *The Oval* in Georgia. Compl., ¶¶ 133-134; Gordon Decl., ¶ 13. Dixon claims that Mr. Perry photographed Dixon and sent him the pictures. Compl., ¶ 133.[2]

At some point, Dixon presented Mr. Perry with a pilot script he had written for *Losing It. Id*. ¶¶ 105, 110. Mr. Perry liked the script and offered to film it. *Id*. ¶ 110. Dixon

---

[2] Dixon also claims that Mr. Perry threatened to punch Plaintiff in the stomach to help Dixon act in accordance with "the way [Mr. Perry] envisioned in a scene." *See* Compl., ¶ 134. Dixon does not allege that Mr. Perry actually punched him or that this incident was of a sexual nature. *Id*.

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

TUCKER ELLIS LLP

claims that on June 4, 2021, he went to Mr. Perry's home in Georgia to discuss *Losing It* and stayed overnight at Mr. Perry's guest house. *Id.* ¶¶ 135-144. Dixon claims that while he was there, Mr. Perry attempted to pull down his underwear and grope his buttocks ("Alleged June 4, 2021 Incident"). *Id.*

Dixon resumed his role in Season 4 of *The Oval*, filmed in Georgia in November 2021. Compl., ¶ 159; Gordon Decl., ¶ 13. In the following months, Dixon and Mr. Perry discussed and eventually filmed *Losing It* in Georgia. Compl., ¶ 161-63.

Dixon acted in Seasons 5 and 6 of *The Oval*, filmed in April 2022 and February 2023 in Georgia. Compl., ¶¶ 166-67; Gordon Decl., ¶ 13. In 2023, Dixon decided to move to Santa Monica. Compl., ¶ 43. After he moved, Dixon had a small role in the movie *Joy Ridge/Finding Joy*, filmed in February 2024 in Georgia. *See* Gordon Decl., ¶¶ 12-13. Dixon contracted to act in Season 7 of *The Oval* but breached his contract by refusing to perform. Compl., ¶ 191; Gordon Decl., ¶ 11.

## III.    ARGUMENT

These facts and allegations make one thing clear: this action does not belong in this Court. Accordingly, the Court should:

(1) conclude that it cannot properly assert personal jurisdiction over Defendants and dismiss Dixon's claims under Fed. R. Civ. P. 12(b)(2);

(2) enforce the Georgia forum selection and choice of law clause in Dixon's Performer Agreements with TPS and dismiss this action for improper venue under Fed. R. Civ. P. 12(b)(3);

(3) dismiss Dixon's claims pursuant to 28 U.S.C. § 1404(a) (*forum non conveniens*); or

(4) in the alternative, transfer this action to the U.S. District Court for the Northern District of Georgia pursuant to 28 U.S.C. §1404(a) or §1406.

/ / /

/ / /

/ / /

TUCKER ELLIS LLP

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

## A.   The Court Should Dismiss this Action for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2).

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). Dixon cannot meet his burden through "bare allegations." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court may consider declarations and evidence outside the pleadings in determining whether personal jurisdiction exists. *See In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). Moreover, where facts contesting personal jurisdiction are supported by declaration, a court "may not assume the truth of allegations in a pleading which are contradicted by" that declaration. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

For personal jurisdiction to exist over a nonresident defendant: the exercise of jurisdiction must be (1) authorized under the state's long-arm statute; and (2) comport with federal due process. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006). California's long-arm statute is coextensive with federal due process, so there is only one analysis here. *See Schwarzenegger*, 374 F.3d at 800–01; *see also Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Federal due process permits a court to exercise personal jurisdiction over a nonresident defendant if "that defendant has at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017). General jurisdiction requires a plaintiff to establish that a defendant has "continuous and systematic" contacts with the forum state

TUCKER ELLIS LLP

to comport with due process. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984). In other words, general jurisdiction applies only if the action is filed in the defendant's "home" state. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). "Only in an 'exceptional' case will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014). Specific jurisdiction exists when the lawsuit arises out of a defendant's specific, lawsuit-relevant contacts with the forum state. *Id.*

1.    **The Court Lacks General Personal Jurisdiction Over Defendants.**

a.    **Tyler Perry is a Georgia Resident and Does Not Have Sufficient Contacts with California.**

Dixon alleges that Mr. Perry "resides in both the State of Georgia and in the State of California and has extensive business contacts in the State of California so that he has [*sic*] conducts substantial, continuous, and systematic business activities in California." Compl., ¶ 28. That is untrue. Individuals are citizens of and only subject to general personal jurisdiction in the state where they are "domiciled" – and a person can only have one "domicile." *See Anderson v. Bank of Am., N.A.*, 2006 WL 889491, at *2 (N.D. Cal. Apr. 5, 2006); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A person's domicile is his or her permanent home where he or she resides with an intention to remain, or to which he or she intends to return. *See Kanter*, 265 F.3d at 857. Owning property or "residing" in a forum state does not subject an individual to that state's general personal jurisdiction. *Id.* ("A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state.").[3]

Mr. Perry is a permanent Georgia resident. *See* Perry Decl., ¶ 2. His primary home is in Georgia. *Id.* He is registered to vote and pays personal income taxes in Georgia. *Id.* ¶ 4. He has a Georgia driver's license. *Id.* Tyler Perry Studios, where he principally works, is in Georgia. *Id.* ¶ 5. Dixon cannot dispute that Mr. Perry's domicile, where he resides and intends to return indefinitely, is Georgia. *Id.* ¶ 4. That Mr. Perry owns property in California

---

[3] Dixon served Mr. Perry in Georgia, so "tag" personal jurisdiction does not exist.

TUCKER ELLIS LLP

is irrelevant as a matter of law. *See Kanter*, 265 F.3d at 857.

Dixon inaccurately contends Mr. Perry "conducts substantial, continuous, and systematic business activities in California." *See* Compl., ¶ 28. That vague allegation is meaningless. The Complaint does not describe any of these alleged "business activities," let alone identify a single instance in which Mr. Perry personally engaged in "business activities" in California – much less "business activities" related to this case. "Generic" and "conclusory" allegations cannot establish personal jurisdiction. *See Antaris Techs., Inc. v. Matthews*, 2025 WL 1939868, at *2–3 (N.D. Cal. July 15, 2025).

### b. None of the Entity Defendants Are California Citizens or Subject to General Personal Jurisdiction.

A Court's ability to exercise general jurisdiction over corporate defendants also turns on the "citizenship" of the entity defendant. A corporation is a citizen of and subject to general jurisdiction in the state(s) where it is incorporated and maintains its principal place of business. *BNSF Ry. Co.*, 581 U.S. at 413.

As the Complaint alleges, the entity Defendants are/were headquartered in Georgia. Compl., ¶¶ 29-30. Neither has/had operations in California. Gordon Decl., ¶¶ 8-9. Further, none of the entity Defendants' owners/members are/were California citizens. *Id.* ¶¶ 5-7. That means the entities are not subject to general jurisdiction in California. *See Daimler AG v. Bauman,* 571 U.S. 117, 122 (2014).

To otherwise establish general jurisdiction on these facts, Plaintiff must demonstrate an "exceptional case," where Defendants' California activities are/were "so 'continuous and systematic' as to render [them] essentially at home in the forum State." *Id.* at 133 n.11(quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Dixon cannot satisfy this considerable burden by simply claiming that a nonresident defendant "does business" in a forum state, which is all that he does here. *See* Compl., ¶¶ 29-30.

In truth, the entity Defendants do/did not "do business" in California such that they would be "essentially at home" in California. Gordon Decl., ¶¶ 8-9. They have no offices

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

TUCKER ELLIS LLP

in California; they do not own property or maintain bank accounts in California; they are not licensed to do business in California; and they do not have a registered agent in California. *Id.*; *see Martinez*, 764 F.3d at 1070 (declining to find general jurisdiction over defendant who had "no offices, staff, or other physical presence in California" and was not "licensed to do business in the state").[4] Dixon has the burden of establishing that jurisdiction is proper, and he fails to allege any facts suggesting this is an "exceptional case."

## 2. The Court Also Lacks Specific Jurisdiction Because the Dispute Does Not Arise or Relate to Defendants' Contacts with California.

The Ninth Circuit employs a three-prong test for specific personal jurisdiction: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *See Picot v. Weston*, 780 F. 3d 1206, 1211 (9th Cir. 2015). Dixon cannot satisfy any one of these prongs.[5]

### a. Dixon Cannot Show Purposeful Direction.

To satisfy the first prong ("purposeful direction") in a tort case, a defendant must have "(1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing

---

[4] While TProd/And Action have produced television shows and films that are viewed and/or promoted through various third-party distributors worldwide (including in California), that does not subject them to general personal jurisdiction. *See, e.g., Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (communications through/with individuals or entities in a forum state not sufficient to exercise personal jurisdiction); *Ivy Bridge Univ., LLC v. Higher Learning Comm'n,* 2015 WL 6555428, at *3 (N.D. Cal. Oct. 28, 2015) (no personal jurisdiction where business did not have offices or staff in California and was not registered to do business in the state).

[5] It is a burden shifting analysis: Dixon must prove the first two prongs, and if he does so, the burden shifts to Defendants "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Picot*, 780 F. 3d at 1211–12 (quoting *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1076 (9th Cir.2011)).

14

TUCKER ELLIS LLP

harm that the defendant knows is likely to be suffered in the forum state." *Picot*, 780 F.3D at 1214 (quoting *Schwarzenegger*, 374 F.3d at 803). Here, the Complaint fails to identify any actions taken by Defendants that have anything to do with California, let alone actions "expressly aimed" at California that were likely to cause harm suffered in California. Dixon's conclusory allegations that the lawsuit "arises out of acts that occurred in California" and/or that the "location of all events herein alleged occurred within the jurisdiction of California" are—much like his claims of alleged assault and harassment— unsupported fantasy. *See* Compl., ¶ 38. But more importantly for this Motion, they lack the specificity or plausibility required to satisfy Dixon's burden.

In fact, they are contradicted by the rest of the Complaint itself. Dixon alleges he met Mr. Perry *in Georgia*, while Dixon was living *in Georgia* and working for a *Georgia-based* event company; Dixon auditioned for and secured a role in a television series produced by And Action (a *Georgia* LLC) that was filmed *in Georgia*; Dixon accepted a recurring acting role in another series that was filmed exclusively *in Georgia*; Dixon stayed on set at Tyler Perry Studios *in Georgia* when COVID-19 delayed production; Dixon wrote a script for a television series and executed a purchase agreement for the pilot episode while he lived *in Georgia*; Dixon filmed the pilot episode for that series *in Georgia*; and Dixon accepted a role in a TPS movie that was filmed *in Georgia*. Compl. ¶¶ 50-54, 59, 72, 93-95, 105, 110, 161-63; Gordon Decl., ¶¶ 7, 12-13.

Dixon alleges five purported incidents of alleged "assault" and/or "harassment" – three of which supposedly took place *in Georgia* (Compl., ¶¶ 65-69, 85, 89-91, 115-120), and one purportedly occurred in the Bahamas (*id.*, ¶¶ 123-126). Dixon does not provide the location of the other incident but does not allege it occurred in California; and his description of the incident suggests it purportedly occurred at Mr. Perry's home in either Georgia or Wyoming. *See* Compl., ¶¶ 135-144. The Complaint references other encounters between Dixon and Mr. Perry during filming of *The Oval* (at the Tyler Perry Studios campus *in Georgia*), and it also generally alleges that Dixon and Mr. Perry exchanged text messages and phone calls during the four or five-year period encompassing Dixon's claims.

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

*See, e.g.,* Compl., ¶¶ 94-95, 106-07, 111, 115-17, 133. As for Dixon's purported "injuries" or "damages", Dixon claims that he sought therapy and was diagnosed with PTSD *in Georgia*; allegedly had a "panic attack in his trailer" upon encountering Mr. Perry on set *in Georgia*; and claims he suffered "close to $400,000" in lost earnings that he would have otherwise received if he performed in Season 7 of *The Oval*, which was filmed *in Georgia*. *Id*., ¶¶ 132, 150, 159, 191; Gordon Decl., ¶ 13. Finally, Dixon claims he "reported" the alleged harassment to the EEOC (Compl., ¶ 189), and his charges were filed with the EEOC's regional office in Atlanta. *See* RJN, Exhibits A-B.

The Complaint lacks any allegations that Dixon interacted with or worked for Defendants in California and identifies no intentional or tortious acts expressly aimed at California, let alone any that caused foreseeable harm in California.[6] *See, generally* Compl. The only California connection is Dixon's unilateral decision to relocate there in January 2023 – over three years after he began performing in TPS productions, and over a year *after* the last purported instance of "assault" in June of 2021 (*see* Compl., ¶¶ 43, 59, 135-43), which does not establish purposeful direction. *See Dangoor v. Peterson's Stampede Dodge Chrysler Jeep, LLC*, 2019 WL 6357252, at *3 (C.D. Cal. Aug. 8, 2019) (holding "that Plaintiff happened to be a resident of California and happened to be located in California when Defendants called him is insufficient to establish specific jurisdiction").

A plaintiff cannot be the only connection between the forum state and the nonresident defendant – the relationship must arise out of contacts that the *defendant* "creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also World-Wide Volkswagen Corp.*, 44 US at 297. It is not enough to allege that a defendant's conduct was "aimed" at

---

[6] Of the nearly 300 allegations in Dixon's Complaint, the only reference to any "activity" in California (aside from Dixon's unilateral decision to relocate to California in early 2023), is a lone allegation that in 2019, while working for an Atlanta-based event company and in conjunction with his employment for that company, Dixon traveled to an event hosted by Mr. Perry in Los Angeles. *See* Compl., ¶ 55. Dixon does not allege that he encountered or interacted with Mr. Perry at this event, which took place *before* Dixon was ever engaged to perform in any TProd/And Action production, and before any incident of "assault" or "harassment" allegedly occurred. *See id*.

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

TUCKER ELLIS LLP

a California resident. *See Ivy Bridge Univ., LLC v. Higher Learning Comm'n,* 2015 WL 6555428, at *4 (N.D. Cal. Oct. 28, 2015). Likewise, Dixon's allegation that he was "harmed" or "injured" by Defendants in California is also insufficient. *See id.* ("[M]ere injury to a forum resident is not a sufficient connection to the forum."); *see id.*; *Walden*, 571 U.S. at 284 (2014). Dixon cannot establish "purposeful direction."

      **b.**    <u>**Dixon's Claims Do Not Arise Out of, or Relate to, Any of**</u>
            <u>**Defendants' Activities in California.**</u>

        Dixon fails the second specific jurisdiction prong too. Dixon must establish that his claims arise out of or relate to a nonresident defendant's contacts with the forum. *See Schwarzenegger*, 374 F.3D at 802. This is a "but for" test: Dixon must show that he would not have been injured "but for" Defendants' contacts with California. *See Ivy Bridge Univ., LLC*, 2015 WL 6555428 at *5; *see also Shute v. Carnival Cruise Lines*, 897 F. 2d 377, 383–84 (9th Cir. 1990) (the "but for" test asks whether "the entire course of events . . . was an uninterrupted whole which began with, and was uniquely made possible by" the nonresident defendant's contacts in the forum state), *rev'd on other grounds* by *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991),

        Because the Complaint does not identify any actions Defendants directed towards California, the "but for" test fails. Dixon's January 2023 relocation is irrelevant: it had nothing to do with Defendants or their "contacts" with California, and Dixon cannot credibly argue that the "entire course of events" would not have occurred "but for" his decision to move there over a year after the last alleged "assault." *See* Compl., ¶¶ 135-144, 171. Plaintiff's conclusory allegations that he was "injured" in California or that Defendants "aimed" their conduct at him in California are insufficient too. *See Walden*, 571 U.S. at 284; *Ivy Bridge Univ., LLC*, 2015 WL 6555428, at *4.

      **c.**    <u>**Exercising Personal Jurisdiction Over Defendants Would**</u>
            <u>**Not Be Reasonable.**</u>

        Dixon cannot satisfy the third prong either, which requires that the exercise of jurisdiction over Defendants be reasonable. *See Terracom v. Valley National Bank*, 49 F.

TUCKER ELLIS LLP

3d 555, 561 (9th Cir. 1995). Courts examine seven factors: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendants of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's in obtaining convenient and effective relief; and (7) the existence of an alternative forum. *See id.* All seven factors should be balanced, and none are dispositive. *See id.*

First, Defendants did not purposefully inject themselves into California affairs. *See Dish Network, LLC v. Jadoo TV, Inc.*, 2020 WL 6536659, at *8 (C.D. Cal. Mar. 16, 2020) ("Because the court has already concluded that [defendants] did not expressly aim [their] conduct at California . . . [the "purposeful interjection"] factor weighs against the reasonableness of exercising personal jurisdiction"). Second, litigating this dispute in California would unduly burden Defendants, who are all Georgia residents. There is no evidence of any sovereignty conflict and California has little or no interest in adjudicating this dispute, and thus the third and fourth factors, respectively, do not weigh in favor of exercising jurisdiction. As for the fifth and seventh factors, the dispute would be resolved more efficiently and appropriately in Georgia, because all of the Defendants and witnesses are located there. Indeed, only one of the seven factors might possibly support California jurisdiction (factor six), as California may be a more "convenient" forum for (only) Dixon because he resides in this state. That alone, however, is not enough. Defendants are unaware of any authority (in the Ninth Circuit or otherwise) allowing courts to exercise personal jurisdiction over out-of-state defendants solely because a particular forum is more convenient for the plaintiff. The action should be dismissed under Fed. R. Civ. P. 12(b)(2).

**B.    Alternatively, the Case Should Be Dismissed for Improper Venue Under Fed. R. Civ. P. 12(b)(3) and U.S.C. § 1406(a).**

The Court should also dismiss this action for being filed in the improper forum. The presence of a forum selection clause in Dixon's Performer Agreements overcomes the general rule that removal precludes any objection for improper venue. *See Tokio Marine*

TUCKER ELLIS LLP

& Fire Ins. Co. v. Nippon Express U.S.A. (Illinois), Inc., 118 F. Supp. 2d 997, 999 (C.D. Cal. 2000) (collecting cases suggesting that "defendants do not waive the right to challenge venue based upon a forum selection clause simply by filing a removal petition"). The forum selection clauses control here and mandate dismissal.

When he signed his Performer Agreements, Plaintiff agreed that:

If a dispute or portion thereof or any claim for a particular form of relief not otherwise precluded by any other provision of this agreement that may not be arbitrated pursuant to applicable state or federal law may be heard only in a court of competent jurisdiction of Fulton County applying Georgia law without regard to its choice of laws principles.

See, e.g. Gordon Decl., Exhibit C, ¶ 24(b); see also Gordon Decl., Exhibit B, ¶ M, Exhibit D, ¶ P(2), Exhibit E, ¶ M.[7]

Under federal law, which governs diversity cases like this one, see Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988), a forum selection clause is prima facie valid and should not be set aside unless the party challenging enforcement of the forum provision can show it is "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching," M/S Bremen v. Zapata Off-Shore, Co., 407 U.S. 1, 15 (1972). This test applies to both "general" and work-related forum selection clauses "in general." Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996); Spradlin v. Lear Siegler Mgmt., 926 F.2d 865, 867 (9th Cir. 1991); Flake v. Medline Indus., Inc., 882 F. Supp. 947, 949 (E.D. Cal. 1995).

The forum selection clauses here are presumptively valid. Dixon cannot meet the "heavy burden" of showing that the clauses are unreasonable or unjust or procured through

---

[7] The Court may properly consider the performer agreements and other facts outside the pleadings in ruling on a Rule 12(b)(3) motion challenging venue. See LP Digital Sols. v. Signifi Sols., Inc., 921 F. Supp. 2d 997, 1004 (C.D. Cal. 2013); Ramos v. Molina Healthcare, Inc., 2012 WL 3104849, at *2 (C.D. Cal. July 27, 2012). The Federal District Court covering Fulton County, Georgia is the U.S. District Court for the Northern District of Georgia.

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

TUCKER ELLIS LLP

fraud. *M/S Bremen*, 407 U.S. at 17. Dixon signed multiple Performer Agreements – *to work in Georgia* – all of which contained explicit Georgia forum selection clauses. *See* Gordon Decl., Exhibit B, ¶ M (*Ruthless*); Exhibit C, ¶ 24(b) (*The Oval*); Exhibit D, ¶ P(2) (*Losing It*); Exhibit E, ¶ M (*Joy Ridge*). There is no reasonable basis to conclude that these contracts were unjust or procured through fraud.[8] Accordingly, this Court can dismiss this case under Fed. R. Civ. P. 12(b)(3), too.

### C.    Solely in the Alternative, this Case Should Be Transferred to Georgia Under 28 U.S.C. §§1406 or 1404.

Although "[t]he interest of justice generally requires transferring an action brought in an improper venue instead of dismissing it[,]" dismissal is proper where—as here—a plaintiff purposefully seeks to avoid prosecution of his case in a different jurisdiction "through blatant forum shopping." *Davidson v. Korman*, 2010 WL 3515760, at *3–4 (N.D. Cal. Sept. 8, 2010) (citing *Wood v. Santa Barbara Chamber of Commerce*, 705 F.2d 1515, 1523 (9th Cir. 1983)).

Alternatively, the Court should transfer the case to the Northern District of Georgia. *See* 28 U.S.C. § 1406(a). Georgia is the appropriate venue for this dispute as it is where Dixon's action "could have"—and indeed, *should have*—been brought. 28 U.S.C. § 1406(a). Georgia is where the parties agreed to adjudicate any dispute, and Georgia is primarily where Dixon alleges that almost all of the purported misconduct took place. Compl., ¶¶ 65-69, 81, 85, 89-91, 100, 115-20, 133. In fact, assuming Dixon can assert a claim under FEHA (he cannot, as explained in Defendants' contemporaneously filed

---

[8] Any argument that the forum selection clauses are invalid under Cal. Lab. Code § 925 fails. Section 925 prohibits employers from requiring employees who reside and work in California from adjudicating claims outside of California and to give up the protection of California laws. Cal. Lab. Code § 925(a). But Dixon was an independent contractor, did not reside in California when he executed the relevant agreements, and Dixon *never* worked for TPS in California. Gordon Decl., ¶¶ 13-16. Moreover, and dispositively, Dixon had representation when he executed the agreements. *Id.*, ¶ 17; *see* Cal. Lab. Code § 925(e) (prohibitions will not apply when employees have representation when signing the agreement).

TUCKER ELLIS LLP

Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)), that statute mandates that the action be brought in Georgia—the jurisdiction where the alleged unlawful conduct occurred. *See* Gov. Code § 12965(b). Dixon cannot avoid the proper enforcement of Gov. Code § 12965(b) by arguing that only a court based in California can adjudicate his FEHA claim; any federal district court outside of this state can conduct a choice of law analysis and apply any California specific law(s) it deems applicable. *See Hunt v. Ameritas Life Ins. Corps*., 2019 WL 7666755, at *2 (N.D. Cal. Sept. 25, 2019) (if venue is improper, the court must dismiss or transfer such case to any district or division in which it could have been brought). Assuming *arguendo* that Dixon could properly bring FEHA claims against Defendants, they should be litigated in Georgia and transferred pursuant to 28 U.S.C. § 1406(a).

*Forum non conveniens* provides another grounds for transfer. District courts may "transfer any civil action to any other district or division where it might have been brought," either "[f]or the convenience of the parties and witnesses" or "in the interest of justice." 28 U.S.C. § 1404(a); *see Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986) (recognizing "the long-approved practice of permitting a court to transfer a case sua sponte under the doctrine of *forum non conveniens* . . . "). To make this determination, courts consider four "private interest factors"—"(1) [the] plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence—and four "public interest factors"—(5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum." *Lapachet v. Cal. Forensic Med. Grp., Inc*., 2017 WL 3917209, at *2 (N.D. Cal. Sept. 7, 2017) (collecting cases); *Bloom v. Express Servs. Inc*., 2011 WL 1481402, at *2–6 (N.D. Cal. Apr. 19, 2011) (applying factors). When there is a forum selection clause at play—as here—the Court need only analyze the public-interest factors. *See Atl. Marine Const*., 571 U.S. 49, 64 (2013). Forum selection clauses should be given "controlling weight in all but the most exceptional cases," where the public interest factors weigh against transferring an action to

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

TUCKER ELLIS LLP

the agreed-upon forum. *Id.* at 63.[9] This is not an exceptional case—all of the applicable[10] public interest factors weigh strongly in favor of transfer to the Northern District of Georgia.

### 1. Georgia Courts Are More Familiar with Georgia Law.

California law does not automatically apply simply because Dixon filed suit here. The purported actions occurred *outside* of California, valid contractual choice of law provisions exist requiring Georgia law, and a Georgia court will be more familiar with Georgia law.

Applying Georgia law would not violate California public policy. *See Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995) (the fact that a chosen state's law differs from California law or imposes different or higher standards does not mean that application of that law would contravene California public policy). Dixon asserts claims under California's anti-discrimination laws (FEHA).[11] Dixon's claims

---

[9] In the event the Court declines to enforce the forum selection clauses, Dixon still cannot establish the "private interest" factors. First, Dixon's choice of venue should be given little weight since he lived, worked, and allegedly faced unlawful conduct in Georgia. He even chose to file an EEOC charge in Georgia. See RJN, Exs. A-B. The three remaining private interest factors weigh in favor of Defendants: all Defendants are Georgia citizens; Georgia is the more convenient forum for 75% of the parties (making the second private interest factor favor Georgia); most of the witnesses will include individuals who worked in Georgia (making the third private interest factor favor Georgia); and virtually all of the evidence is in Georgia (making the fourth private interest factor favor Georgia).

[10] There are no "related cases."

[11] Those laws, however, do not apply to Plaintiff because he never worked for Defendants in California. *See Gonsalves v. Infosys Techs., LTD.*, 2010 WL 1854146, at *5 (N.D. Cal. May 6, 2010) (dismissing FEHA claims in the absence of allegations that the plaintiff "was employed in California."); *Loza v. Intel Americas, Inc.*, 2020 WL 7625480, at *4 (N.D. Cal. Dec. 22, 2020) (dismissing FEHA claims where there was no connection between California activities and alleged discrimination); *see also Paparella v. Plume Design, Inc.*, 2022 WL 2915706, at *4 (N.D. Cal. July 25, 2022) (dismissing FEHA claims where plaintiff did not plead he was employed in California or that the alleged conduct occurred in California). Plaintiff's other claims based on violations of California statutes fail for similar reasons. But *even if* Plaintiff could properly assert these claims, a Georgia court

TUCKER ELLIS LLP

---

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

should be brought under the laws of the state where he worked, which in this case is Georgia (which follows federal anti-discrimination laws (*i.e.* Title VII)). Since Title VII mirrors the FEHA, and Dixon can equally seek recovery for alleged harassment and retaliation under Georgia (*i.e.* federal) law, doing so would not violate any public policy of California. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (noting that the FEHA mirrors Title VII).

Georgia law also applies to Dixon's state law tort claims because California courts apply the laws of the state where the tort is committed. *See McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 98 (2010) (California law did not apply to tort claims simply because "plaintiff happened to move to a jurisdiction whose law provides more favorable treatment to plaintiff than that available under [the law of the state where the tortious conduct occurred].").

Dixon would not be denied any rightful relief if Georgia law applied to this dispute. Although California may have a policy interest in protecting its citizens, it does not follow that applying another state's laws would necessarily violate public policy. *See Gen. Signal Corp.*, 66 F.3d at 1506; *see also, IBM v. Bajorek*, 191 F.3d 1033, 1042 (9th Cir. Cal. 1999) (applying New York law to dispute despite California's "considerable interest in protecting its citizens from oppressive [restrictive covenants] imposed by employers" because the plaintiff could not establish specific Labor Code provisions applicable to the dispute that contradicted New York law); *see also Olinick v. BMG Entertainment*, 138 Cal. App. 4th 1286, 1300 (2006) (finding that choice of law provision in employment agreement applied to claims arising under California law). The first public interest factor weighs in favor of transfer.

### 2.    **"Local interests" Lie in Georgia.**

Plaintiff was a citizen of Georgia for *four years out of the five-year* time period relevant to his claims, including when the alleged "assaults" occurred. He was a Georgia citizen when

could easily "familiarize" itself with California law applicable to straightforward statutory claims.

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

he executed Performer Agreements containing Georgia choice of law and forum selection clauses, and he worked for Georgia businesses only in Georgia. *See, generally* Compl.; Gordon Decl, ¶¶ 13-14. Thus, local interests exist only in Georgia. *See, e.g. Schott v. Ivy Asset Mgmt. Corp*., 2010 WL 4117467, at *10 (N.D. Cal. Oct. 19, 2010) (finding that local interest was stronger in the state where the plaintiff resided at the time he executed the contract giving rise to the dispute, and where the plaintiff resided when the harm occurred). States have a strong interest in "deciding controversies involving businesses headquartered [in the state], and that employ a substantial number of [their] citizens." *Bloom*, 2011 WL 1481402, at *5. The local interest factor points to Georgia.

### 3. <u>California Courts Are More Congested.</u>

By transferring this case, this Court can do its small part in lightening its considerable docket in favor of a District with more capacity to handle this action. As this Court is surely aware, it is among the busiest in the nation. In fact, it was *the busiest* in the country in the first three months of this year with *16,625* new case filings. By contrast, the Northern District of Georgia saw less than half of that amount, 7,345. *See Table C-3—U.S. District Courts– Civil Federal Judicial Caseload Statistics*, United States Courts (Mar. 31, 2025) https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-3. Although this District has more judges, the data suggests that the Northern District has more bandwidth to efficiently try this matter. Further, all of the Defendants, witnesses, and evidence is located in Georgia, and thus the case will likely proceed much more efficiently there.

The public interest factors weigh in favor of transfer. This action does not belong in California and should be transferred at minimum.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss this action or, in the alternative, transfer it to the Northern District of Georgia.

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

TUCKER ELLIS LLP

Date: October 1, 2025.                    TUCKER ELLIS, LLP


                                          By: */s/ Ndubisi Ezeolu*
                                              Ndubisi A. Ezeolu

                                          *Attorneys for Defendants*

NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES

TUCKER ELLIS LLP

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Ndubisi Ezeolu, counsel for Defendants Tyler Perry, TPS Production Services, LLC, and And Action, LLC hereby certify that this brief contains 6,619 words which complies with the word limit of L.R. 11-6.1.

Date: October 1, 2025.                    **TUCKER ELLIS, LLP**


By: <u>*/s/ Ndubisi Ezeolu*</u>
     Ndubisi A. Ezeolu

*Attorneys for Defendants*

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

## PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles. I am over the age of eighteen years and not a party to the within entitled action. My business address is 515 South Flower Street, Forty Second Floor Los Angeles, CA 90071.

On October 1, 2025, I served the foregoing document(s) DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT on the interested parties in this action as follows:

JONATHAN J. DELSHAD
LAW OFFICES OF JONATHAN J. DELSHAD, PC
1663 Sawtelle Blvd., Suite 220
Los Angeles, CA 90025
jdelshad@delshadlegal.com

(X)  **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above and placing each for collection and mailing on that date following ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

(X)  **BY E-MAIL OR ELECTRONIC TRANSMISSION**: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

(X)  **FEDERAL**: I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 1, 2025, at Los Angeles, California.


*/s/ Annika Garcia*
Annika Garcia