TUCKER ELLIS LLP
Matthew A. Boyd (admitted pro hac vice)
matthew.boyd@tuckerellis.com
Ndubisi A. Ezeolu (Bar No. 256834)
ndubisi.ezeolu@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071
Tel: 213.430.3400
Fax: 213.430.3409

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (pro hac vice forthcoming)
alexspiro@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
Tel: 212 849 7000
Fax: 212 849 7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Mari F. Henderson (Bar No. 307693)
marihenderson@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Tel: 213 443 3000
Fax: 213 443 3100

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| DEREK DIXON, an individual | ) Case No. 2:25-cv-09112-JFW-SK |
| Plaintiff, | ) **DEFENDANTS' NOTICE OF** |
| | ) **MOTION AND MOTION TO** |
| v. | ) **DISMISS; MEMORANDUM OF** |
| | ) **POINTS AND AUTHORITIES IN** |
| TYLER PERRY, an individual; TPS | ) **SUPPORT** |
| PRODUCTION SERVICES, LLC, a | ) |
| Limited Liability Company; AND | ) Date: November 17, 2025 |
| ACTION, LLC, a Limited Liability | ) Time: 1:30 p.m. |
| Company; and DOES 1 through 50, | ) |
| inclusive | ) Judge: Honorable John F. Walter |
| | ) |
| Defendants. | ) Complaint filed: June 13, 2025 |
| | Trial date: Not set |

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

-1-

Please take notice that, on November 17, 2025, at 1:30 p.m. in Courtroom 7A at the First Street U.S. Courthouse, 350 W 1st Street, Suite 4311, Los Angeles, CA 90012, Defendants Tyler Perry, TPS Production Services, LLC, and And Action LLC, will move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendants rely on the arguments and authority set forth in the accompanying Memorandum of Points and Authorities, the Declarations of Robyne Gordon, Tyler Perry [Dkt. 1-5], and Matthew A. Boyd, the entire Court record, and all arguments that may be presented to the Court.

## Statement of Issues to be Decided

1) Whether the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## Statement of Compliance with Local Rule 7.3

On October 16 and 20, 2025, Defendants' counsel met and conferred with Plaintiff's counsel over video in a good faith attempt to resolve the issues raised in this Motion. *See* Declaration of Matthew A. Boyd ¶¶ 2-4. The parties were unable to resolve the dispute, thus necessitating the filing of this Motion.

Date: October 21, 2025.

TUCKER ELLIS, LLP


By: */s/ Matthew A. Boyd*
Matthew A. Boyd

*Attorneys for Defendants*

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     RELEVANT FACTS AND ALLEGATIONS ......................................... 2

    A.   The Parties .................................................................................... 2

    B.   Dixon's Allegations ..................................................................... 3

III.    LEGAL STANDARD .............................................................................. 6

IV.     ARGUMENT AND AUTHORITY ......................................................... 7

    A.   Dixon Cannot Bring California Claims for Alleged Conduct that Occurred Outside of California. ................................................... 7

    B.   Dixon Cannot Pursue a FEHA Claim Because He Did Not Allege an Exhaustion of Administrative Remedies. ....................... 12

    C.   Dixon's Action Is Time Barred by Georgia's Two-Year Statute of Limitations. .............................................................................. 13

        1.   California's Borrowing Statute Applies Georgia's Statute of Limitations Because Injuries Arose in Georgia. .................. 14

        2.   Dixon's Claims Are Time-Barred Under Georgia's Two-Year Statute of Limitations. ......................................... 15

    D.   Dixon's Common Law Claims for Negligence and Intentional Infliction of Emotional Distress (Causes of Action 8 and 9) Are Barred by Worker's Compensation's Exclusive Remedies Provisions. ......................... 17

V.      CONCLUSION ....................................................................................... 18

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Anderson v. CRST Int'l, Inc.*,
2015 WL 1487074 (C.D. Cal. Apr. 1, 2015) ...................................................9

*Anderson v. CRST Int'l, Inc.*,
685 F. App'x 524 (9th Cir. 2017) ...................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................7

*Beckett v. Universal Int'l Music B.V.*,
2015 WL 13918143 (C.D. Cal. Aug. 17, 2015) ............................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................7, 16

*Bobadilla v. Ocean Garden Products, Inc.*,
2005 WL 8173132 (S.D. Cal. Aug, 17, 2005) ........................................17, 18

*Campbell v. Arco Marine, Inc.*,
42 Cal. App. 4th 1850 (1996) ....................................................................7, 8

*Cossman v. DaimlerChrysler Corp.*,
108 Cal. App. 4th 370 (2003), *as modified* (Apr. 30, 2003) .......................15

*Davis v. Gen. Atomics*,
2025 WL 1127872 (C.D. Cal. Jan. 23, 2025) ...............................................12

*Doe v. Cnty. of Plumas*,
2025 WL 2468256 (E.D. Cal. Aug. 27, 2025) ..............................................14

*Doe v. Morehouse Coll.*,
2019 WL 12419486 (N.D. Ga. Apr. 1, 2019) ...............................................15

*Doe v. Neverson*,
2023 WL 9375100 (C.D. Cal. Nov. 16, 2023) ..............................................15

*Doe v. Virgin America, Inc.*,
2018 WL 5291987 (N.D. Cal. Oct. 22, 2018) ...............................................10

*Gantt v. Sentry Ins.*,
1 Cal. 4th 1083 (1992) ..................................................................................18

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

-i-

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ........................................................................... 7

*Gonsalves v. Infosys Techs.*,
2010 WL 1854146 (N.D. Cal. May 6, 2010) ................................................. 8, 9

*Green v. Ralee Eng'g Co.*,
19 Cal. 4th 66 (1998) ...................................................................................... 18

*Groom v. City of El Paso De Robles*,
2020 WL 5077355 (C.D. Cal. Apr. 29, 2020) ................................................ 14

*Guerrero v. Gates*,
442 F.3d 697 (9th Cir. 2006) .......................................................................... 16

*Gulaid v. CH2M Hill, Inc.*,
2016 WL 5673144 (N.D. Cal. Oct. 3, 2016) ............................................. 9, 11

*Hill v. Gergun Transportation, Inc.*,
2024 WL 4203379 (E.D. Cal. Sept. 16, 2024) ............................................... 10

*Hill v. Workday, Inc.*,
773 F. Supp. 3d 779 (N.D. Cal. 2025) .................................................. 7, 8, 12

*Hudson v. Lyft, Inc.*,
2024 WL 3585596 (N.D. Cal. July 30, 2024) ................................................. 15

*Jackson v. City of Willacoochee*,
2023 WL 174996 (S.D. Ga. Jan. 12, 2023) .................................................... 16

*Kobbervig v. M.A.C. Cosms., Inc.*,
2018 WL 6177259 (C.D. Cal. Mar. 26, 2018) ................................................ 13

*Loza v. Intel Americas, Inc.*,
2020 WL 7625480 (N.D. Cal. Dec. 22, 2020) .............................................. 8, 9

*McCann v. Foster Wheeler LLC*,
48 Cal. 4th 68 (2010) ...................................................................................... 15

*Mitchell v. City of Santa Rosa*,
2008 WL 4534050 (N.D. Cal. Oct. 7, 2008) .................................................. 13

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) ............................................................................ 6

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

-ii-

*Nogali v. Transcon Fin., Inc.*,
 2014 WL 12968085 (C.D. Cal. July 3, 2014)........................................................11

*Paparella v. Plume Design, Inc.*,
 2022 WL 2915706 (N.D. Cal. July 25, 2022).........................................................9

*Ramirez-Castellanos v. Nugget Mkt., Inc.*,
 2020 WL 2770060 (E.D. Cal. May 28, 2020)........................................................13

*Rodriguez v. Airborne Express*,
 265 F.3d 890 (9th Cir. 2001).................................................................................12

*Rulenz v. Ford Motor Co.*,
 2013 WL 2181241 (S.D. Cal. May 20, 2013)........................................................11

*Sexton v. Spirit Airlines, Inc.*,
 2023 WL 1823487 (E.D. Cal. Feb. 8, 2023)...........................................................9

*Shroyer v. New Cingular Wireless Servs., Inc.*,
 622 F.3d 1035 (9th Cir. 2010)..................................................................................7

*Slichter v. Siemens Prod. Lifecycle Mgmt. Software, Inc.*,
 2019 WL 8108744 (C.D. Cal. Aug. 29, 2019).......................................................13

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001)....................................................................................7

*Staggs v. Wang*,
 185 Ga. App. 310 (1987)........................................................................................16

*Stremcha v. Allscripts, Inc.*,
 2017 WL 10574371 (C.D. Cal. Nov. 8, 2017).......................................................14

*Sullivan v. Oracle Corp.*,
 51 Cal. 4th 1191 (2011).................................................................................7, 9, 11

*United States v. Ritchie*,
 342 F.3d 903 (9th Cir. 2003)..................................................................................11

*Weinberg v. Valeant Pharms.*,
 2015 WL 13907424 (C.D. Cal. Nov. 4, 2015).........................................................9

*Williams v. Lee*,
 2012 WL 1080578 (N.D. Ga. Mar. 1, 2012)..........................................................16

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

-iii-

*Williams v. United Parcel Serv., Inc.*,
　　2025 WL 1400182 (E.D. Cal. May 14, 2025) ....................................................17

## Statutes

Cal. Civ. Code § 361 .................................................................13, 14, 15

Cal. Civ. Code § 51.9 ..........................................................................0

Cal. Civ. Code §52 ........................................................................7, 9, 10

Cal. Civ. Code §1708.5 ...................................................................7, 9, 10

Cal. Civ. Proc. Code § 340.16(a) ..............................................................14

Ga. Code Ann. § 9-3-33 ..................................................................13, 15

## Other Authorities

Fed. R. Civ. P. 12(b)(1) ........................................................................8

Fed. R. Civ. P. 12(b)(2) ........................................................................1

Fed. R. Civ. P. 12(b)(3) ........................................................................1

Fed. R. Civ. P. 12(b)(6) ................................................................6, 8, 18

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## I.      INTRODUCTION

Derek Dixon's claims and allegations against Tyler Perry and his production companies TPS Production Services, LLC and And Action, LLC are profoundly disappointing, cynical, and—most of all—false. Drawing on Hollywood stereotypes and the bad acts of others, Dixon distorts and tries to turn sinister Mr. Perry's acts of platonic friendship and professional mentorship. Dixon invents alleged assaults and encounters that never happened. Mr. Perry never assaulted Dixon or committed any sexual battery. He did not offer Dixon pay raises and shoot Dixon's television pilot script to threaten, coerce, or control Dixon. Dixon earned through merit alone whatever professional opportunities he received from Defendants. And it is notable that in his effort to exploit his friendship and professional relationship with Mr. Perry to obtain a $260 million payday, Dixon was forced to lie not only about Mr. Perry, but himself too. However, buried in his 300-paragraph Complaint is a grain of truth. Dixon did not file this lawsuit because of anything Mr. Perry did, but because of what Mr. Perry *did not* do. As he admits, at Paragraph 186, Dixon decided to accuse Mr. Perry of sexual misconduct because Mr. Perry could not sell Dixon's pilot to Netflix. This admission—along with everything else in the Complaint—reveals that this case, as cliché as sounds, is about Dixon's greed and avarice, not Mr. Perry's alleged and nonexistent harassment or abuse. Mr. Perry looks forward to refuting each and every false accusation in court.

But it should never come to that. Dixon's Complaint was written for entertainment blogs and social media, not a court of law and thus unsurprisingly fails to state any viable claims against Mr. Perry or his production company. As discussed in Defendants' contemporaneously filed Motion to Dismiss under Federal Rules 12(b)(2) and 12(b)(3), Dixon filed this case in the wrong court and wrong state; the Court ought to dismiss it for that reason alone. There is a reason that Dixon did so: all of his claims are barred by Georgia's two-year statute of limitations. So instead, he filed in California and asserted California statutory claims—including under California's Fair Employment and Housing Act ("FEHA")—for alleged misconduct committed by Georgia citizens, in Georgia, when

-1-

Dixon lived and worked in Georgia, to avoid dismissal. But California courts do not tolerate or entertain such transparent forum shopping. Dixon's statutory and tort claims cannot be enforced extraterritorially and should be dismissed. And under California's "borrowing statute," each of Dixon's claims are subject to Georgia's two-year statute of limitations and all but one are time-barred. Were that not enough, Dixon cannot pursue his FEHA claims because he has not exhausted administrative remedies or obtained a right to sue letter from the State of California, and his negligence and intentional infliction of emotional distress claims are precluded under California's Workers' Compensation Act.

By his actions and false accusations, it is clear that Dixon needs help. But he cannot find it in this Court.

## II.    RELEVANT FACTS AND ALLEGATIONS

### A.    <u>The Parties</u>

Tyler Perry is a renowned director, producer, screenwriter, and actor for television, stage, and film. He lives in and is a citizen of Georgia, where he ultimately owns a studio and production companies—including Defendant TPS Production Services, LLC ("TProd"), a Georgia LLC[1]—that principally makes his movies and television shows. Dkt. 1-5, Declaration of Tyler Perry ("Perry Decl."), ¶¶ 2, 5. As acknowledged in the Complaint and discussed in greater detail below, unlike most of his peers in the movie and television industry, Mr. Perry and his companies do not operate out of Los Angeles. *Id*. ¶ 5. Instead, when Mr. Perry and TProd work on a project, they produce and principally film it in Atlanta. *See* Declaration of Robyne Gordon ("Gordon Decl."), ¶ 13.

Plaintiff Dixon is an actor who, from 2019 to 2024, worked on Mr. Perry's television series *Ruthless* and *The Oval* and the film *Joy Ridge/Finding Joy* at Tyler Perry Studios in Georgia. *Id*. He also worked with Mr. Perry—in Georgia—on a pilot for a series titled *Losing It. Id*. With the exception of an *Oval* cast trip to the Bahamas and an alleged visit to Mr. Perry's home in Wyoming, Mr. Perry and Dixon's professional relationship and

---

[1]    Mr. Perry also ultimately owned Defendant And Action, LLC ("And Action"), a now dissolved entity that stopped operating in 2023.

interactions took place entirely in Georgia[2]—Dixon performed no work for Mr. Perry or his companies anywhere else. Perry Decl., ¶ 6; Gordon Decl., ¶ 13.

**B.    Dixon's Allegations**

Dixon's Complaint is a work of fiction that mischaracterizes his platonic and professional friendship with Mr. Perry and invents interactions and events that never took place. Defendants deny its false and material allegations but acknowledge—for the purposes of this Motion—that the Court must accept non-conclusory allegations as true and thus summarizes them as follows.

Mr. Perry and Dixon met in 2019. Dkt. 1-1 ("Compl."), ¶¶ 50-52. At the time they met, Dixon lived in Georgia and worked for an event company that catered and coordinated functions for Mr. Perry. *Id.* Dixon and Mr. Perry discussed acting and Mr. Perry helped Dixon get a small guest role on a single episode of his series *Ruthless*. *Id.* ¶¶ 51, 57, 59.

In January 2020, Dixon attended a party at Mr. Perry's home in Georgia and allegedly spent the night in a guestroom. *See id*. ¶¶ 65-69. Dixon falsely alleges that Mr. Perry tried to get into bed with him that evening ("Alleged January 2020 Incident"). *Id.* This alleged encounter apparently did not stop Dixon from visiting Mr. Perry's Georgia home two months later. *Id.* ¶¶ 81-85, 89-91. Dixon falsely claims that during this second visit Mr. Perry asked him "sexually charged questions" and grabbed his "throat in a sexually aggressive manner" ("Alleged March 2020 Incident"). *See id.*

Although Dixon alleges that he was the victim of escalating sexual misconduct, he had no problem taking a role on Season 2 of Mr. Perry's television series *The Oval*, also filmed in Georgia. Compl., ¶¶ 81-83; Gordon Decl., ¶ 13. After the COVID-19 pandemic initially caused filming delays, *The Oval*'s cast and crew quarantined and moved into makeshift residences on the Tyler Perry Studios campus in Georgia so that they could complete production. Compl. ¶ 106. Dixon claims that Mr. Perry "dropped off alcohol at his house" at Tyler Perry Studios, "coerced" him—over the phone—to imbibe, and had

---

[2]  Consistent with this reality, Dixon's Performer Agreements with Mr. Perry's companies included Georgia choice of law and forum selection clauses. *See* Gordon Decl. Exs. B-E.

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

"sexually explicit rants" over the phone. *Id.* ¶ 100. He also alleges that when he visited Mr. Perry's trailer for drinks on the penultimate day of shooting, Mr. Perry made sexual advances and tried to grope his buttocks ("Alleged August 2020 Incident"). *Id.* ¶¶ 106, 115-19. About a month later, Dixon joined Mr. Perry and his fellow cast members on a trip to the Bahamas. *Id*. ¶¶ 123-126. Dixon alleges that on this trip, Mr. Perry again made sexual advances and tried to grope his buttocks ("Alleged October 2020 Bahamas Incident"). *Id.*

Dixon alleges that in early 2021, while filming *The Oval* Season 3 in Georgia, Mr. Perry took and texted Dixon photographs of Dixon on set. *Id.* ¶ 133. Dixon also alleges that he and Mr. Perry exchanged text messages about Dixon's personal life. *Id.*[3]

At some point in 2020 Dixon sent Mr. Perry a pilot script for a potential television show called *Losing It. Id*. ¶¶ 105, 110. Mr. Perry liked the script and offered to film the pilot. *Id.* ¶ 110. Dixon alleges that in June 2021 he went to Mr. Perry's home to discuss the project. *Id*. ¶¶ 135. Dixon claims that during this visit, he and Mr. Perry drank to excess and discussed Dixon's sex life. *Id*. ¶ 136. After Dixon became too intoxicated to drive, Mr. Perry offered to let him stay overnight in his guest house. *Id.* ¶¶ 136-37. Dixon claims that when Mr. Perry showed Dixon to his room, Mr. Perry made yet another unwanted sexual advance, tried to pull down Dixon's underwear, and groped Dixon's buttocks ("Alleged June 2021 Incident"). *Id.* ¶¶ 137-39. Dixon alleges that shortly after the purported incident, Mr. Perry invited him onto his yacht and that Dixon declined. *Id.* ¶¶ 146-48. Dixon claims that after he declined this invitation, Mr. Perry stopped talking to him for five months. *Id*. ¶ 149. Dixon claims that Mr. Perry's representatives broke that silence by offering Dixon a pay raise for the next season of *The Oval* and informing him that Mr. Perry intended to produce the pilot for *Losing It. Id*. ¶¶ 153-155.

Dixon alleges that Mr. Perry made this offer to keep the "Alleged June 2021 Incident" under wraps. *Id.* ¶ 156. Dixon also quickly accepted the offer and returned to

---

[3] Dixon also claims that Mr. Perry threatened to punch Dixon in the stomach to help him act in "the way [Mr. Perry] envisioned in a scene." Compl., ¶134. Dixon does not allege that Mr. Perry actually punched him or that this incident was sexual harassment. *Id.*

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

shoot *The Oval* Season 4 in Georgia that same month. *Id.* ¶ 159. He also sold *Losing It* to TProd and began shooting the pilot in March 2022 at Tyler Perry Studios in Georgia. *Id.* ¶¶ 162-63. Although he alleges that Mr. Perry first expressed interest in producing *Losing It* nearly a year before the Alleged June 2021 Incident, Dixon claims that Mr. Perry never intended to sell the show to any network and instead spent millions to buy and produce the pilot just to "silenc[e]" him about the Alleged June 2021 Incident. *Id.* ¶ 164.

After filming seasons 5 and 6 of *The Oval* in Atlanta, Dixon moved to Santa Monica, California in 2023. *Id.* ¶¶ 168, 170-71. Dixon alleges that after he moved to California, Mr. Perry called him from time-to-time to discuss his efforts to sell *Losing It*. *Id.* ¶ 177. Dixon claims that on these calls, he and Mr. Perry would also discuss his personal life. *Id.* ¶¶ 178-179, 185. After trying for six months to sell *Losing It*, Mr. Perry could not find any network interested in buying the show, so he offered Dixon a job as a writer for another series. *Id.* ¶¶ 184-187. After concluding that Mr. Perry would be unable to get *Losing It* made—apparently because nobody wanted to buy it—Dixon decided to accuse Mr. Perry of sexual assault and harassment. He purportedly reported Mr. Perry to the EEOC (*id.*, ¶ 189), but does not allege that he made any report to the California Civil Rights Department ("CRD") and does not allege he obtained—and did not attach to his Complaint a copy of—a "right to sue" letter from either the EEOC or CRD. After making this report, Dixon refused to work on Season 7 of *The Oval*, despite being under contract. *Id.*, ¶ 191.

The following chart identifies the dates and locations of the Alleged Incidents and events in Dixon's Complaint:

| Timeframe | Alleged Event | Location | Citation |
|---|---|---|---|
| September 2019 | Dixon and Mr. Perry first meet. | Atlanta, GA | Compl. ¶¶ 50-52. |
| November 2019 | Dixon films guest role on *Ruthless* | Atlanta, GA | Compl. ¶ 59 |
| January 2020 | Alleged January 2020 Incident | Douglasville, GA | Compl., ¶¶ 65-69. |
| March 2020 | Alleged March 2020 Incident | Atlanta, GA | Compl., ¶¶ 81, 85, 89-91. |
| April 2020 | Dixon quarantined and temporarily | Atlanta, GA | Compl., ¶ 100. |

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

| Timeframe | Alleged Event | Location | Citation |
|---|---|---|---|
| | resided on the campus of Tyler Perry Studios, and Dixon alleges that Mr. Perry coerced Dixon to drink alcohol while having phone conversations with Mr. Perry. | | |
| August 2020 | Alleged August 2020 Incident | Atlanta, GA | Compl., ¶¶ 115-20. |
| October 2020 | Alleged October 2020 Bahamas Incident | The Bahamas | Compl., ¶¶ 123-26. |
| Early 2021 | Dixon alleges that Mr. Perry photographed Dixon on the set of *The Oval* and sent the pictures to Dixon, along with texts about Dixon's personal life. | Atlanta, GA | Compl., ¶ 133. |
| June 4, 2021 | Alleged June 2021 Incident | Unknown Location (but not California) | Compl., ¶¶ 135-44. |
| March 21, 2022 | Dixon and Mr. Perry began shooting the pilot of "Losing It." | Atlanta, GA | Compl., ¶ 163. |
| January 2023 | Dixon moved to Santa Monica, CA. | Santa Monica, CA | Compl., ¶ 171. |

## III.  LEGAL STANDARD

This Court is authorized under Rule 12(b)(6) to dismiss a complaint, cause of action, or claim within a cause of action if the Complaint fails to state a cognizable legal theory or fails to allege sufficient facts under a cognizable legal theory. *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir. 2019). "To survive a motion to dismiss, a

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

To withstand a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Only "well-pleaded factual allegations" should be assumed as true to determine whether those allegations plausibly give rise to an entitlement to relief. *Id.* The court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## IV.    ARGUMENT AND AUTHORITY

### A.    <u>Dixon Cannot Bring California Claims for Alleged Conduct that Occurred Outside of California.</u>

Dixon brings seven California statutory claims—three under FEHA—seeking damages for alleged misconduct committed by Georgia citizens, in Georgia (or the Bahamas and one unidentified location), while Dixon lived and worked in Georgia. Compl., ¶¶ 196-251, 277-87. But FEHA does not protect non-residents—like Dixon—when the alleged misconduct occurred outside of the state, *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1860 (1996), and Dixon's remaining statutory claims are barred by California's "presumption against extraterritorial application" of its statutes. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). Accordingly, because Dixon cannot state a claim under FEHA (Causes of Action 1, 2, 10), the Ralph Act (Cause of Action 3), California Civil Code Section 52 (Causes of Action 4 and 5), and California Civil Code Section 1708.5 (Cause of Action 6) for conduct that occurred outside of California, all six of these causes of action should be dismissed. Similarly, Dixon's tort claims (Causes of Action 5-7) must be dismissed to the extent they arise under California law. *See Hill v. Workday, Inc.*, 773

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

F. Supp. 3d 779, 798 (N.D. Cal. 2025) (dismissing tort claim for "failure to allege a basis for extraterritorial application of California tort law").

***Dixon Worked Outside of California—FEHA Does Not Apply***. Dixon cannot maintain any claim against Defendants under FEHA because "FEHA, a California statute, does not apply extraterritorially." *See Loza v. Intel Americas, Inc.*, 2020 WL 7625480, at *4 (N.D. Cal. Dec. 22, 2020).[4] California law is clear that the FEHA "should not be construed to apply to non-residents employed outside the state when the tortious conduct did not occur in California." *Campbell*, 42 Cal. App. 4th at 1860.

That is exactly the case here, so FEHA cannot apply. At the time of the alleged misconduct giving rise to his claims, Dixon was not yet a California resident. *Supra* at 7-8. He lived and worked in Georgia for And Action and TProd—each a citizen of Georgia (as is Mr. Perry). *Compare* Compl. ¶¶ 28-30, 50, 59, 100, 163 *with Campbell*, 42 Cal. App. at 1860. And even though Dixon eventually moved to Santa Monica in 2023, he does not (and cannot) allege that he performed any work for—or even interacted with Defendants—in California, *see Gonsalves v. Infosys Techs.*, 2010 WL 1854146, at *5 (N.D. Cal. May 6, 2010) (dismissing FEHA claims in the absence of allegations that the plaintiff "was employed in California"), or that Defendants engaged in any other activities in California that give rise to his claims of alleged harassment or retaliation, *compare* Compl. ¶¶ 65-69, 81, 85, 89-91, 100, 115-20, 123-26, 133, 135-44 with *Loza*, 2020 WL 7625480, at *4 (dismissing FEHA claims where there was no connection between California activities and alleged discrimination).

Dixon thus has no claim—and is entitled to no relief—under the statute. *Id.*; *see also Paparella v. Plume Design, Inc.*, 2022 WL 2915706, at *4 (N.D. Cal. July 25, 2022) (dismissing FEHA claims because the plaintiff had not sufficiently alleged "that he was

---

[4] Extraterritoriality should be decided on a 12(b)(6) motion to dismiss, not a motion under Rule 12(b)(1). *See Hill v. Workday, Inc.*, 773 F. Supp. 3d 779, 792–93 (N.D. Cal. 2025) ("Failure to adequately plead grounds for the extraterritorial application of state law constitutes a failure to state a claim on the merits, and is not merely a subject matter jurisdiction defect.").

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

either employed in California or that the discriminatory conduct occurred in California"); *Sexton v. Spirit Airlines, Inc.*, 2023 WL 1823487, at *4 (E.D. Cal. Feb. 8, 2023) (dismissing claim for retaliation under FEHA when "the conduct that gave rise to liability did not take place in California"); *Weinberg v. Valeant Pharms.*, 2015 WL 13907424, at *5 (C.D. Cal. Nov. 4, 2015) (similar). The Court should dismiss these claims with prejudice.

      ***Dixon's Remaining Statutory Claims Are Barred.*** The Court should also dismiss Dixon's claims for violation of the Ralph Act (Cause of Action 3), California Civil Code Section 52 (Causes of Action 4 and 5), and California Civil Code Section 1708.5 (Cause of Action 6) because they cannot overcome California's "presumption against extraterritorial application" of its statutes. *Sullivan*, 51 Cal. 4th at 1207.

      "However far the Legislature's power may theoretically extend, [courts] presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Id.* (quotations omitted). This presumption is difficult to rebut and bars the extraterritorial enforcement of California law ***even if a plaintiff was a California resident at the time of the alleged misconduct***. *See Anderson v. CRST Int'l, Inc.*, 2015 WL 1487074, at *5 (C.D. Cal. Apr. 1, 2015) (rejecting plaintiff's argument that FEHA applied to out of state conduct if the plaintiff is a California resident) (reversed on other grounds in *Anderson v. CRST Int'l, Inc.*, 685 F. App'x 524 (9th Cir. 2017). "[T]he concept of extraterritoriality … concerns legislation that regulates conduct that occurs in a foreign jurisdiction – regardless of the plaintiff's residency." *Id.* Unless the Legislature ***expressly*** intended for a statute to regulate out-of-state conduct, California residents cannot simply avail themselves of that law without showing conduct occurring in California and a factual nexus between that conduct and the alleged claims. *See, e.g. id.*; *Gonsalves*, 2010 WL 1854146, at *5; *Loza*, 2020 WL 7625480, at *4; *Gulaid v. CH2M Hill, Inc.*, 2016 WL 5673144, at *9 (N.D. Cal. Oct. 3, 2016).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

-9-

Here, this Court must determine—for each claim—"whether the California Supreme Court would apply California law [] under the circumstances . . . ." *Hill v. Gergun Transportation, Inc.*, 2024 WL 4203379, at *8 (E.D. Cal. Sept. 16, 2024). This analysis is not difficult under these circumstances; the answer is no.

*First*, the Court should follow the commonsense holdings of its sister courts in this Circuit to find that Civil Code Section 52 does not apply to claims based on conduct that occurs outside of California. In *Doe v. Virgin America, Inc*, plaintiff brought a Bane Act claim alleging that she was sexually assaulted in Toronto, Canada. *See* 2018 WL 5291987, at *1, 5 (N.D. Cal. Oct. 22, 2018). The court dismissed the claim because plaintiff did not "allege any specific conduct by the … [d]efendants that took place in California[.]" *Id.* at *6. So too here. Dixon does not allege that he was assaulted or subjected to workplace harassment in California. Compl. ¶¶ 65-69, 85-92, 119, 123-26,135-41. He also makes no non-conclusory allegations that "Defendants engaged in severe and outrageous sexual harassment and sexual assaults" that "were calculated to prevent Plaintiff from working free from sexual harassment or violence" in *California. Id*. ¶ 43. Because Dixon does not identify any "specific conduct by the … [d]efendants that took place in California," his Civil Code Section 52 claims should be dismissed.

*Second*, the same analysis bars Dixon's Ralph Act Claim (Third Cause of Action) and Sexual Battery Claim under Civil Code Section 1708.5 (Sixth Cause of Action). The Section 1708.5 analysis is straightforward: Dixon falsely alleges incidents of sexual battery that took place outside of California when he was not a California resident. *Supra* at 7-8. There can be no credible argument that a California civil statute containing no language that it should be enforced outside of the state's borders can apply to this alleged misconduct. *See* Cal. Civ. Code § 1708.5. The Court's evaluation of Dixon's Ralph Act claim is similarly uncomplicated and requires the same conclusion. The Ralph Act prohibits sexual harassment in a business or professional relationship, California Civil Code § 51.9, and, as alleged, Dixon and Defendant's entire professional relationship was based in Georgia. Compl. ¶¶ 50-52, 59, 75, 106, 163. Moreover, Dixon expressly assented

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

and agreed that the relationship would be governed by *Georgia law*. Gordon Decl., Exhibits B-E; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if . . . the document forms the basis of the plaintiff's claim."); *Nogali v. Transcon Fin., Inc.*, 2014 WL 12968085, at *1 (C.D. Cal. July 3, 2014) (considering documents the court found to be "the basis" for plaintiff's claims). Defendants have found no case in which any court enforced either statute to remedy misconduct that did not take place in California or any authority suggesting that either statute was intended to be applied extraterritorially.

There is certainly no reason why the "presumption against extraterritorial application" can be rebutted in this case. *See Sullivan*, 51 Cal. 4th at 1207. The Complaint's only mention of any "activity" in California is an allegation that, in 2019 (before Dixon was ever engaged to perform any work for TProd or And Action), he traveled to an event hosted by Mr. Perry in Los Angeles (but Dixon does not expressly allege he materially interacted with Mr. Perry at this event), Compl., ¶ 55, and that Dixon chose to move to California in 2023, *id*. ¶ 171. On their face, neither of these two things involve Defendants' conduct or activities, let alone conduct that is related to Dixon's claims in this case. *See Gulaid*, 2016 WL 5673144, at *9 ("[G]eneral allegations of Defendants' conduct in California alone are not sufficient" to plausibly allege a factual nexus between the California-based activities and the alleged unlawful conduct.). And Dixon's conclusory allegations that the purported harassment "continued" after Dixon moved to California are not enough to defeat the presumption where, as here, effectively all the alleged wrongful conduct occurred outside of California. *See* Compl., ¶ 174; *Rulenz v. Ford Motor Co*., 2013 WL 2181241, at *4 (S.D. Cal. May 20, 2013) (plaintiff's limited allegations of California activity did not overcome presumption because "nearly all of the alleged tortious conduct occurred outside the state of California").

The Court should dismiss Dixon's Causes of Action 1-6 and 10.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

***Dixon's tort claims are barred to the extent they arise under California law.*** California's "presumption against extraterritorial application" also applies to tort claims brought under California law. *Hill*, 773 F. Supp. 3d at 798 (applying presumption against extraterritorial application to claim for intentional infliction of emotional distress). In *Hill*, the plaintiff's injuries occurred in Maryland and his supervisor's actions took place in New York. *Id.* The court dismissed the plaintiff's claim for intentional infliction of emotional distress with prejudice because the plaintiff failed to "sufficiently allege a nexus between the alleged harms . . . and the state of California." *Id.* The same conclusion applies here. The alleged actions giving rise to Dixon's tort claims occurred outside of California, and Dixon has not alleged a sufficient "nexus" between the alleged harm and California. Compl. ¶¶ 65-69, 85-92, 119, 123-26, 135-41. The Court should accordingly dismiss Dixon's claims for sexual assault, negligent hiring, and intentional infliction of emotional distress (Causes of Action 5-7).

B.    **Dixon Cannot Pursue a FEHA Claim Because He Did Not Allege an Exhaustion of Administrative Remedies.**

Even if Dixon could bring a FEHA claim for alleged incidents and "employment" outside of California, the Court must dismiss his FEHA causes of action because he did not plead that he has exhausted administrative remedies and satisfied the necessary prerequisites to file such a claim. To bring a claim under FEHA, a plaintiff must first file a written charge with the California Civil Rights Division ("CRD") (formerly known as the Department of Fair Employment and Housing) and receive a right to sue notice from the CRD. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001) (FEHA plaintiff must exhaust administrative remedies, which requires "filing a written charge with [the CRD] . . . and obtaining a written notice from [the CRD] of the right to sue"). A plaintiff's failure to satisfy these requirements mandates the dismissal of his FEHA claims. *See Davis v. Gen. Atomics*, 2025 WL 1127872, at *12 (C.D. Cal. Jan. 23, 2025) (dismissing FEHA claim when plaintiff failed to allege filing a timely charge with the CRD); *Slichter v. Siemens Prod.*

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*Lifecycle Mgmt. Software, Inc.*, 2019 WL 8108744, at *5 (C.D. Cal. Aug. 29, 2019) (similar).

Here, Dixon alleges only that he "report[ed] the sexual harassment to the EEOC."[5] Compl., ¶ 189. The Complaint does not allege that he filed a complaint with the CRD, nor does it allege that he received a right to sue notice from either the EEOC or the CRD. *See generally,* Compl. As such, Dixon cannot assert claims under the FEHA in this (or any) California court. *See Ramirez-Castellanos v. Nugget Mkt., Inc.*, 2020 WL 2770060, at *4 (E.D. Cal. May 28, 2020) (plaintiffs' FEHA claims failed as a matter of law where plaintiffs had not obtained their right-to-sue notice before filing a lawsuit alleging FEHA claims); *Kobbervig v. M.A.C. Cosms., Inc.*, 2018 WL 6177259, at *3 (C.D. Cal. Mar. 26, 2018) (dismissing FEHA claims for failure to exhaust where plaintiffs filed their administrative complaints three months after they filed a civil suit asserting FEHA claims and explaining that "[p]laintiffs are not granted leave to amend because to assert these claims, [they] must file a new lawsuit"); *Mitchell v. City of Santa Rosa*, 2008 WL 4534050, at *5 (N.D. Cal. Oct. 7, 2008) (finding the court lacked jurisdiction over plaintiff's FEHA claim because plaintiff did not receive a right-to-sue letter until after he filed a lawsuit).

Because Dixon failed to plead administrative exhaustion, his FEHA claims (Causes of Action 1, 2, and 10) should be dismissed.

## C.    Dixon's Action Is Time Barred by Georgia's Two-Year Statute of Limitations.

It is obvious that Dixon filed this action in California and asserted California law because his purported claims are time-barred by Georgia's two-year statute of limitations for personal injury actions, including claims of sexual assault and harassment. Ga. Code Ann. § 9-3-33. But this tactic cannot help him. California does not tolerate such blatant forum shopping and instead "borrows" the applicable statute of limitations of the jurisdiction in which the cause of action arose. Cal. Civil Code § 361. Georgia's two-year

---

[5] Dixon did, in fact, file an EEOC charge – but in Georgia, not California, *see* RJN, Exs. A-B, so there has been no dual-filing with the CRD as far as Defendants are aware.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

statute of limitations still applies to Dixon's claims—no matter where he files or how he tries to plead them—and accordingly the Court should dismiss Causes of Action 1-9 as time barred.[6]

### 1. **California's Borrowing Statute Applies Georgia's Statute of Limitations Because Injuries Arose in Georgia.**

California's "borrowing statute," Civil Code section 361, "creates a general rule that when a cause of action has arisen in another jurisdiction but cannot be maintained against a particular defendant in that jurisdiction because of the lapse of time, the action cannot be maintained against that defendant in a California court." *Stremcha v. Allscripts, Inc.*, 2017 WL 10574371, at *6 (C.D. Cal. Nov. 8, 2017). In other words, if a plaintiff has a claim that accrues in a state with a two-year statute of limitations and sues in California because it has a four-year statute, the two-year statute applies.

The Court's primary task in applying the "borrowing statute" is to determine where the claim "arose." *Id.* In the Ninth Circuit, "a tort claim 'arises' where the unlawful acts are committed." *Id.* at *7 (quotations omitted). Dixon began his employment and most of his alleged interactions with Defendant Perry and the resulting alleged unlawful acts occurred in Georgia. *See* Gordon Decl., Exhibits B-E; Compl., ¶¶ 65-69, 85-92, 119, 123-26, 135-41.

And in this case, where the claims are for alleged sexual assault and battery, the claim accrues on the date of "the last act, attempted act, or assault with the intent to commit an act, of sexual assault." Cal. Civ. Proc. Code § 340.16(a). When a plaintiff "was clearly aware of the assaults . . . allegedly committed[,]" the claims accrue "when the last incident of sexual assault occurred[.]" *Doe v. Cnty. of Plumas*, 2025 WL 2468256, at *3 (E.D. Cal. Aug. 27, 2025); *see also Groom v. City of El Paso De Robles*, 2020 WL 5077355, at *6 (C.D. Cal. Apr. 29, 2020) ("The latest Plaintiff's tort claim of sexual assault could have

---

[6] Dixon's retaliation claim allegedly accrued in 2024 and, as alleged, is not time-barred. Compl., ¶¶ 187-195. However, the claim arises from FEHA and is barred as a matter of law because FEHA cannot be enforced extraterritorially and because Dixon did not exhaust all administrative remedies before filing. *Supra* 9-11, 14-15.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

accrued based on the allegations in Plaintiff's FAC is in April 2018, when McGuire last attempted to sexually assault Plaintiff."). Here, Dixon's claim apparently accrued in Georgia, Compl., ¶¶ 65-69, 85-92, 119, 123-26, 135-41, and Georgia's statute of limitations applies. *See Hudson v. Lyft, Inc.*, 2024 WL 3585596, at * 2–4 (N.D. Cal. July 30, 2024) (applying Section 361 and dismissing negligent hiring, retention, supervision, and entrustment claim under Illinois' two-year statute of limitations when alleged sexual assault occurred in Illinois).

That Dixon may *now* be a California resident and citizen does not trigger section 361's citizenship exception on any of his claims. The citizenship exception "applies only where the plaintiff was a California citizen at the time the cause of action accrued, and does not extend to a plaintiff who became a citizen of California after the cause of action accrued but before the lawsuit in question was filed." *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 85 (2010); *see also Cossman v. DaimlerChrysler Corp.*, 108 Cal. App. 4th 370, 378 (2003), *as modified* (Apr. 30, 2003) (holding that "the citizenship exception to section 361" did not apply when plaintiffs "did not live in California at the time of accrual"). Dixon did not move to California until 2023, Compl., ¶ 43—*after* any alleged assault or incident giving rise to his claims, *supra* at 7-8. Because Dixon "has not alleged that [he] was a citizen of California at the time of [the] alleged assault[s]," he cannot "take advantage of § 361's exception." *Doe v. Neverson*, 2023 WL 9375100, at *2 (C.D. Cal. Nov. 16, 2023).

### 2.  Dixon's Claims Are Time-Barred Under Georgia's Two-Year Statute of Limitations.

Dixon filed his lawsuit on June 13, 2025. *See* Compl. Georgia has a two-year statute of limitations for any personal injury claim, including Dixon's claims for sexual harassment, sexual battery, sexual assault, negligent hiring, and intentional infliction of emotional distress. *See Doe v. Morehouse Coll.*, 2019 WL 12419486, at *2 (N.D. Ga. Apr. 1, 2019) (applying section 9-3-33 to claims for sexual harassment, sexual assault, and intentional infliction of emotional distress); *Williams v. Lee*, 2012 WL 1080578, at *4 (N.D. Ga. Mar. 1, 2012), *report and recommendation adopted*, 2012 WL 1080572 (N.D. Ga. Mar. 30, 2012)

(applying two-year statute of limitations to claims of sexual harassment, assault, and battery); *Staggs v. Wang*, 185 Ga. App. 310, 312 (1987) (holding allegations of sexual harassment "sound in tort" and applying two-year statute of limitations); *Jackson v. City of Willacoochee*, 2023 WL 174996, at *3 (S.D. Ga. Jan. 12, 2023) (applying two-year statute of limitations to claims for negligent training and hiring and intentional infliction of emotional distress).

Accordingly, under Georgia's statute of limitations, Dixon's claims are time-barred to the extent that they are based on conduct that arose prior to June 2023—two years before he filed this lawsuit.

Georgia's statute of limitations therefore knocks out all of Dixon's claims for sexual assault, battery, harassment, negligent hiring, and intentional infliction of emotional distress based on any of the "Alleged Incidents" contained in his Complaint, since the last such incident allegedly occurred in June 2021—more than four years before he filed. *Supra* at 8. The harassment—and related negligent and emotional distress—claims based on Mr. Perry's alleged inappropriate communications are similarly time-barred; Dixon does not identify or allege any post-June 2023 communication that occurred while he was under contract with or working for any of the Defendants. Dixon's single—and vague— conclusion that Mr. Perry "continued to harass" him in 2024 while he "was still working on 'The Oval,'" Compl., ¶ 185, is insufficient to satisfy his obligations under *Twombly*. 550 U.S. at 570. At the very least, even if it does not enter judgment for Defendants as to the entire cause of action, the Court should dismiss these claims to the extent that they are based on any pre-June 2023 conduct. *See Guerrero v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2006) (affirming dismissal of time-barred portion of claim); *Beckett v. Universal Int'l Music B.V.*, 2015 WL 13918143, at *4 (C.D. Cal. Aug. 17, 2015) ("[A] court may dismiss portions of a claim that are not timely brought.").

//

//

//

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

### D.    Dixon's Common Law Claims for Negligence and Intentional Infliction of Emotional Distress (Causes of Action 8 and 9) Are Barred by Worker's Compensation's Exclusive Remedies Provisions.

Finally, Dixon asserts common law claims for negligent hiring, retention, and supervision (Cause of Action 8) and intentional infliction of emotional distress (Cause of Action 9). As for the former, Dixon claims that TProd was negligent in hiring, retaining and/or supervising its "employees." As an initial matter, because Dixon does not identify which individuals TProd negligently supervised—presumably he is referring to Mr. Perry—and does not even allege that Mr. Perry was employed by TProd or And Action at any time, or that Mr. Perry made the ultimate decision to engage Dixon as an actor, his claim fails as inadequately pleaded under *Twombly* and *Iqbal*.

Second, and more fundamentally, Dixon's negligence claims are preempted and precluded by California Worker's Compensation Act. *See, e.g. Bobadilla v. Ocean Garden Products, Inc.*, 2005 WL 8173132, at *3 (S.D. Cal. Aug, 17, 2005) (ongoing injuries from alleged workplace sexual harassment are deemed to arise from the course of employment because they are "inextricably tied to the employer-employee relationship" and, thus, barred by the exclusive remedy provisions of California's Workers' Compensation Act). Although Defendants dispute Dixon's claim that he was ever an employee—as opposed to an independent contractor—Dixon alleges that he was. Complaint, ¶ 197. By making that allegation, Dixon pleads himself out of any tort claims. *Bobadilla*, 2005 WL 8173132, at *3. Because all of Dixon's claims stem from (and are inextricably intertwined with) an alleged employment relationship, he cannot pursue a cause of action for negligence against TProd. *See id.* As such, Dixon's Eighth cause of action should be dismissed. *See id.*

Dixon's claim for intentional infliction of emotional distress fails for the same reason. The worker's compensation exclusivity provision "applies even where an employer's acts within the employment relationship are 'calculated to cause severe emotional disturbance.'" *Williams v. United Parcel Serv., Inc.*, 2025 WL 1400182, at *9

-17-

(E.D. Cal. May 14, 2025) (citing *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1099 (1992), *overruled on other grounds by Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998)). As such, the exclusivity provision preempts Dixon's IIED claim. While the Ninth Circuit has held that plaintiffs can recover for IIED where a cause of action for wrongful termination in violation of public policy is also alleged, Dixon does not assert such a claim here (and cannot do so) – those cases are distinguishable for that reason. *See Bobadilla*, 2005 WL 8173132, at *3 (citing cases). Dixon's common law claims for negligent hiring and IIED should therefore both be dismissed under Rule 12(b)(6).

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety.


Date: October 21, 2025.


TUCKER ELLIS, LLP


By:  */s/ Matthew A. Boyd*
        Matthew A. Boyd

*Attorneys for Defendants*

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Ndubisi A. Ezeolu, counsel for Defendants Tyler Perry, TPS Production Services, LLC, and And Action, LLC hereby certify that this brief contains 6,408 words which complies with the word limit of L.R. 11-6.1.


Date:  October 21, 2025.                         **TUCKER ELLIS, LLP**


By:  */s/ Matthew A. Boyd*
        Matthew A. Boyd

*Attorneys for Defendants*

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

# **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 21st day of October 2025, all counsel of record who are deemed to have consented to electronic services are being served with a copy of this Document via email.

/s/ Matthew A. Boyd
Matthew A. Boyd

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400