Law Offices of Jonathan J. Delshad
Jonathan J. Delshad (SBN 246176)
jdelshad@delshadlegal.com
1663 Sawtelle Blvd., Ste 220
Los Angeles, CA 90025
Tel: (424) 255-8376
Fax: (424) 256-7899
*Attorneys for Plaintiff*

*Attorneys for Plaintiff*
*[Additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| DEREK DIXON, an individual<br><br>           Plaintiff,<br><br>    v.<br><br>TYLER PERRY, an individual; TPS PRODUCTION SERVICES, LLC, a Limited Liability Company; AND ACTION, LLC, a Limited Liability Company; and DOES 1 through 50, inclusive<br>           Defendants. | Case No. 2:25-cv-09112<br><br>**JOINT RULE 26(F) REPORT**<br><br>**Judge:** Hon. John F. Walter<br><br>**Date of Scheduling Conference:** November 17, 2025 at 1:15 PM at 350 W. 1st St. Los Angeles, CA 90012.<br><br>**Courtroom:** 7A |

1

### **<u>Introduction</u>**

2      In compliance with the Court's Order of October 8, 2025,

3  setting the Scheduling Conference (Dkt. 22), Fed. R. Civ. P. 26(f),

4  and Local Rule 26-1, counsel for plaintiff Derek Dixon

5  ("Plaintiff"), and counsel for defendants Tyler Perry, TPS

6  Production Services, LLC, and And Action LLC (collectively,

7  "Defendants"), hereby jointly submit this Joint Rule 26(f) Report.

8      Plaintiff commenced this action on June 13, 2025, by filing a

9  Complaint in the Superior Court of California alleging quid pro quo

10  sexual harassment (Gov. Cod 12940(j)), work environment harassment

11  (Gov. Code 12940(j)), sexual harassment (Ralph Act §51.9),

12  workplace gender violence (Cal Civ. Code §52.4), violation of the

13  Bane Act (Cal Civ. Code §52.1), sexual battery (Cal Civ. Code

14  §1708.5), sexual assault, negligent hiring, supervision, or

15  retention of an employee, intentional infliction of emotional

16  distress, and retaliation (FEHA Gov. Code 12940(h)).  On September

17  24, 2025, Defendants removed the case to this Court.  Plaintiff

18  filed a motion to remand on October 24, 2025. Defendants filed

19  motions to dismiss on October 1, 2025, before the case was assigned

20  to this Court.  Defendants refiled their motions to dismiss on

21  October 27 and 28, 2025 pursuant to the Court's October 8, 2025,

22  order directing Defendants to refile the motions in accordance with

23  the Court's Standing Order.

24      The parties met and conferred regarding this Joint Report on

25  October 27, 2025. The meeting was on zoom and lasted about one hour.

26

27  **I.   Jurisdiction, Venue, And Parties**

28

---

**A. <u>Jurisdiction</u>**

**<u>Plaintiff's Position:</u>**

Plaintiff disputes that Defendant properly removed this case based on diversity jurisdiction and has filed a remand. Defendant failed to allege that the parties were diverse at the time of filing ***and*** at the time of removal. Defendants at best, only allege diversity at the time of the complaint. Furthermore, diversity was pled only based on "information and belief" that Plaintiff was a "resident" or "domicile" of California at the time of the complaint and based only on allegations in the Complaint. It is a jurisdictional rule that removal is improper based on only allegations of "information and belief." Defendant's reliance on mixed statements of fact and law in the Complaint regarding Plaintiff's "Domicile" that was made on "information and belief" is insufficient as a matter of settled case law for removal. Bradford v. Mitchell Bros. Truck Lines (N.D.Cal. 1963) 217 F.Supp. 525, 527, Wolff v. Archibald, 8 Cir., 14 F. 369; and Hambleton v. Duham, 9 Cir., 22 F. 465.

Additionally, Defendant's position regarding Mr. Dixon's domicile in the notice of removal is extremely inconsistent with the representations they make in their motion to dismiss. Defendant alleges FEHA / California law should not apply to the facts of this case because Dixon worked and resided in Georgia for 8 years before moving to California and that he never stopped working for Defendant in Georgia.  See Docket 27, pg 16 fn 10 (Stricken for noncompliance with Court Rules).

As a separate and independent reason for remand, Defendant "And Action LLC" was properly served in this case pursuant to CCCP

412.20 and failed to properly and timely consent to removal (consent was not properly authorized by a person with authority to consent), necessitating remand.

Specific and general jurisdiction also apply in this case. Specific because Plaintiff did work for Defendant in California (Filming in Georgia was but a small part of the work performed by Mr. Dixon which included, *inter alia*, writing, memorizing lines, practicing his parts).

Plaintiff also alleges that he left from Georgia to California to get away from Mr. Perry due to the sexual assaults which happened in Georgia. After relocating to California, Mr. Dixon alleges that he was subject to ongoing harassment and as such was subjected to "continuing violations" of sexual harassment actionable in California. Therefore, specific jurisdiction exists in California.

With respect to general jurisdiction, Defendants cannot deny that they engage in business in California. If nothing else, Defendants hired California employees (such as Dixon) to do work for them while such employees reside in California. Defendant's contract with Plaintiff for his performance in "Joy Ridge" specifically states Mr. Dixon's California address as the proper address for notices. During the time Mr. Dixon lived in California, the only part of his job that was performed in Georgia was filming. Otherwise, all aspects of his employment were expected to be performed in California. Additionally, Plaintiff believes that Defendants have deep business relationships with California, including but not limited to distribution agreements with California companies (such as Netflix), recurring banking relationships for the production of films with California banks,

JOINT RULE 26(F) REPORT

and that Mr. Perry owns a personal home in California which is used
for business.

**Defendants' Position**:

This Court has subject matter jurisdiction over this action
pursuant to its "diversity jurisdiction" under 28 U.S.C.
1332(a)(1). There should be no dispute about this fact. Dixon
alleged in his complaint that he "is currently domiciled in
California," Compl. ¶ 49, and has not represented that his
citizenship has changed since he filed his Complaint this summer.[1]
The Defendants are all citizens of Georgia. Complete diversity
exists.

Plaintiff's remand motion is therefore frivolous and without
any factual or legal support. Defendants have requested that
Plaintiff withdraw his motion and have informed counsel they may
file a motion pursuant to Rule 11 if he does not. Not only does
the remand motion ignore and conceal from the Court Plaintiff's
binding judicial admission that he is domiciled in California, it
makes the legally frivolous argument that Defendants could not
allege his citizenship based on his residency and on information
and belief. Recent and binding Ninth Circuit law squarely hold the
opposite. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir.
2016) ("It is a longstanding principle that the place where a person
lives is taken to be his domicile until facts adduced establish the
contrary."); *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227-28

---

[1]  As Plaintiff himself notes in his remand motion, "a domicile
once acquired [is] presumed to continue." Dkt. 34 at 14.

(9th Cir. 2019) ("[a] defendant's allegations of citizenship may be based solely on information and belief.").

Plaintiff's argument that this case should be remanded because And Action did not consent is similarly based on misrepresentations of fact and law. Plaintiff did not serve And Action (and did not, as he suggests, merely misplace the proof of service) and cannot claim that he effectuated service of And Action by serving the other Defendants as their summons do not state they were being served for And Action. Moreover, And Action did expressly consent to and join the removal and further manifested its consent by filing motions to dismiss.

As Defendants explained in their pending motion to dismiss, this Court lacks personal jurisdiction over Defendants in this action. Defendants are Georgia citizens, all of the alleged incidents giving rise to Dixon's claims took place outside of California, and all contracts between Dixon and Defendants contain Georgia choice-of-law and forum-selection clauses. The Court does not have general personal jurisdiction over Defendants, who are domiciled in and operate out of Georgia. Despite Dixon's attempted revisionist history, his Complaint alleges that he was a Georgia resident and worked for Defendants in Georgia when the alleged misconduct occurred. He filed a complaint for sexual harassment with **Georgia's EEOC** and does not allege any harassing conduct that occurred in or was directed to California; just vague allegations that he received texts and phone calls while he was in California. This is not enough to establish specific jurisdiction as a matter of law.

B. **Venue**

**Plaintiff's Position:**

Plaintiff alleges that venue is appropriate in this court pursuant to §1441(a), because in removed cases §1391 does not apply. However, Plaintiff believes this court should remand to State Court as stated above. Plaintiff also believes that any choice of "venue" clause in any employment contract is unenforceable pursuant to Labor Code §925 which limits the enforceability of such contracts on California employees.  The exception for "representation" to § 925 only applies if the employee had legal counsel who negotiated the terms of the choice of law / venue. Here Defendants argue that Mr. Dixon's "talent agent" who did not negotiate any part of the choice of law / venue provision exempts Dixon from the protection of Labor Code §925, it does not.

**Defendant's Position:**

Even if this Court had jurisdiction over Defendants, venue is improper because all of the alleged misconduct giving rise to Plaintiff's claims occurred in Georgia (or otherwise outside of California) and Plaintiff signed binding, enforceable forum selection clauses in each of his contracts with Defendants mandating that any action be venued in Fulton County, Georgia.  The forum selection clauses overcome the general rule that removal precludes any objection for improper venue.  Moreover, Plaintiff cannot avail himself of Labor Code §925 because he did not reside in California when he executed the forum selection clauses at issue and was represented when he so agreed to have any claims litigated in Georgia.

C. **Parties**

**Plaintiff's Position:**

-6-

With respect to parties, Plaintiff contends that all Defendants have been properly served (Including And Action LLC). Plaintiff concedes that the proof of service for And Action LLC is missing, but And Action LLC has nonetheless been properly served pursuant to CCCP §412.20. Plaintiff has engaged in discovery to ascertain the identities of the fictitiously named Defendants.

Specifically, Plaintiff believes that certain networks that have aired Mr. Perry's shows (such as BET and Netflix) had a certain level of control over Dixon's employment and / or had knowledge of Mr. Perry's prior sexual assaults / harassment on other employees and continued to engage and employee Mr. Perry. Therefore, such entities may be liable as joint employers under California law.

Mr. Dixon would have preferred to engage in preliminary discovery into the relationship between Mr. Perry and BET / Netflix, but Defendants do not appear willing to cooperate with such discovery prior to the date on which this court set as the cut off for serving fictitious defendants. Therefore, Plaintiff will likely amend the complaint to add appropriate entities as defendants and dismiss them if it turns out during discovery that they are not joint employers.

**Defendant's Position**:

Only Defendants Tyler Perry and TProd have been served with the Complaint and Summons. Plaintiff "concedes the proof of service for And Action is missing" for the simple reason that And Action was never served. Plaintiff cannot credibly claim that he served And Action through Mr. Perry or TProd as neither summons identified And Action as the entity being served. *E.g.*, *Mannesmann DeMag, Ltd. v. Superior Ct.*, 172 Cal. App. 3d 1118, 1122-23 (1985) (holding

defendant was not properly served when the summons did not identify the entity being served). Nonetheless, And Action has consented to removal and joined the pending motions to dismiss.

Plaintiff's contention that BET and Netflix may also be Defendants to this action is devoid of any factual or legal support. This contention appears to be an effort to interfere with Defendants' business relationships with these entities to induce Defendants to settle Plaintiff's claims. Defendants will object to any effort to amend the Complaint to include these entities.

## II.    Factual Background

### A.    Plaintiff's Position

Derek Dixon, a professional actor and screenwriter, alleges that he was subjected to a sustained pattern of workplace sexual harassment, assault, and retaliation by Tyler Perry, a prominent media figure and entertainment mogul, while employed as a series regular on Perry's television show "The Oval" as well as other films and movies. Dixon claims that Perry began targeting him shortly after they met in November 2019 at an event in Atlanta, Georgia, where Dixon was working for an event company. Perry allegedly noticed Dixon in the crowd, obtained his phone number, and subsequently offered him small roles in Perry's productions, including "Ruthless" and later a series regular role as the character Dale on "The Oval." Dixon also was hired to write for Perry, do "punch ups" on Perry's scripts, and do other tasks for Perry as an employee.

Dixon alleges that Perry used his position of power and influence in the entertainment industry to create a coercive and sexually exploitative dynamic, initially promising career

advancement and creative opportunities but later subjecting him to escalating unwanted sexual advances, physical assaults, and threats to his employment when Dixon opposed or denied Perry's sexual advances. The complaint details that Perry's conduct included repeated unwanted sexual comments, text messages, and physical assaults, such as groping and forcibly removing Dixon's clothing. Specific incidents described include Perry entering Dixon's guesthouse bedroom uninvited and touching him inappropriately, making sexually explicit FaceTime calls, groping Dixon's buttocks during a group trip to the Bahamas, and attempting to sexually assault him during an overnight stay at Perry's home. Dixon escaped to California to avoid Perry. However, Perry continued to leverage job security and professional opportunities—including the ability to sell Dixon's own television pilot, "Losing It," as quid pro quo for Dixon's silence and compliance and continued to sexually harass Dixon.

Mr. Perry constantly told Dixon that he could not sell "Losing It" until a later date because of restrictions that he had with Netflix. In reality, Perry was attempting to prevent Dixon from filing charges against him until he thought the statute of limitations had passed. In this way, Perry was using his leverage of producing "Losing It" to buy silence.

However, Once Perry felt that the statute of limitations for Mr. Dixon's sexual assault claims had passed, Mr. Perry quickly dropped all interest in selling or producing "Losing It."

Once the leverage was gone, Dixon had less to lose by reporting the harassment to the Equal Employment Opportunity Commission (EEOC). Dixon alleges that Defendants failed to investigate or

take corrective action, instead they retaliated against Dixon. Dixon claims that the company made no effort to make sure Dixon was protected from Perry on the set of "The Oval" or off set. Such conditions and harassment persisted through 2024 and made it intolerable and unsafe for Dixon to continue working. This resulted in a constructive discharge. Dixon was unable to participate in filming Season 7 of "The Oval" due to the ongoing harassment. As a result, Dixon asserts he suffered severe emotional distress, physical ailments, and significant professional and financial harm. The lawsuit, filed in Los Angeles Superior Court on June 13, 2025, seeks $260 million in actual and punitive damages and includes claims for sexual harassment, assault, retaliation, and related violations under Title VII of the Civil Rights Act of 1964 and California state law.

**B.   Defendants' Position**

After meeting Mr. Dixon in 2019, Mr. Perry helped him secure a minor role in the television series "Ruthless."  Thereafter, Dixon was hired to act on the television series "The Oval."  Dixon was hired as an independent contractor on all projects with Defendants and worked on all projects in Georgia.  Mr. Perry had a professional and platonic relationship with Mr. Dixon and, among other things, provided him with professional advice and mentorship.  Mr. Dixon's allegations that Mr. Perry assaulted or harassed him are false and denied.  According to Mr. Dixon's Complaint, after Mr. Perry was unable to sell Mr. Dixon's pilot television show to any network, Mr. Dixon decided to accuse Mr. Perry of harassment with Georgia's EEOC.  After filing this complaint, Mr. Dixon refused to work on

season seven of "The Oval" and therefore resigned. Mr. Dixon's claim of retaliation is false and denied.

**III. Points Of Law**

    **A.**   <u>**Plaintiff's Position**</u>

    The case was properly pled and initiated in State Court because during the end of his employment, Mr. Dixon was a California employee doing work in California. The occasionally filming in Georgia consisted of a few weeks a year. As such, there is no "extraterritorial" application of FEHA or other California statutory claims. This does not affect Plaintiff's motion for remand, because remand looks at Domicile at both the time of the complaint and at the time of removal. Strotek Corp. v. Air Transp. Ass'n of Am. (9th Cir. 2002) 300 F.3d 1129, 1131;

    If this case is not remanded due to a lack of diversity jurisdiction, it should not be dismissed or relocated to Georgia. Pursuant to §1441(a) proper venue is only in this district and Defendant's waive their ability to argue that this Court is the proper venue when they chose to remove this case to this Court. See _Polizzi v. Cowles Magazines, Inc_., 345 U.S. 663, 664 (1953). Additionally, Defendant's contract of adhesion which includes a "choice of venue" and "choice of law" provision, would require California employees to be subjected to Georgia Law in a court in Georgia. Such clause is unenforceable in California. It is in violation of California's interest in protecting aliens from abusing the rights of California citizen and expressly prohibited by CA Labor Code §925.

    Perry violated California law when he continued to harass Plaintiff, a California employee. Perry violated California law

when he continued to condition favorable treatment on non-reporting of / submission to sexual advances. TPS failed to protect Mr. Dixon when he reported the harassment and took no steps to investigate his claims.  Of all causes of action, only the sexual assault claims took place in Georgia. Plaintiff believes that the 2-year statute of limitations for the sexual assault claims is not applicable due to equitable tolling.

**B.   Defendants' Position**

As discussed in Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), Dixon cannot bring California claims for alleged conduct that occurred outside of California.  Dixon's claims under California's Fair Employment and Housing Act ("FEHA") must be dismissed because FEHA does not apply extraterritorially, *see Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1860 (1996), and Dixon's other statutory claims (Causes of Action 3-6) and tort claims (Causes of Action 5-7) similarly do not overcome the strong "presumption against extraterritorial application of California law, *see Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *Hill v. Workday, Inc.*, 773 F. Supp. 3d 779, 798 (N.D. Cal. 2025). Mr. Dixon alleges that he was a Georgia resident working for Defendants in Georgia from 2019 to 2023 and does not allege in his Complaint that he performed any work for Defendants in California. Dixon's claims are also time barred by Georgia's two-year statute of limitations for personal-injury actions because California "borrows" the applicable statute of limitations of the jurisdiction in which the claim arose.  Cal. Civil. Code § 361.

**IV.  Motions**

**Remand.** Plaintiff has filed a motion to remand to state court. Defendants' opposition is currently due on November 17, 2025. Defendants have requested that Plaintiff withdraw this motion and have informed Plaintiff they may seek relief under Rule 11 if he does not.

**Dismiss.** Defendants have filed motions to dismiss pursuant to Fed R. Civ. P. 12(b)(2), 12(b)(3), 12(b)(6), 28 U.S.C. §§ 1406(a), 1404(a), and the doctrine of forum non conveniens.[2]  Plaintiff's oppositions are currently due on November 17.  All pending motions are to be heard on December 8, 2025.

**Ex Parte to Add Defendants.** Plaintiff anticipates filing an ex-parte motion per Court's procedure to add additional defendants which may affect diversity jurisdiction.

**Discovery.**

**Plaintiff's Position:** Plaintiff has served discovery looking to expose evidence of other sexual harassment and sexual assault allegations, settlements, and NDAs by and against Tyler Perry, which is permitted and admissible under California law. ***Pantoja v. Anton*** (2011) 198 Cal.App.4th 87. Plaintiff also seeks evidence which supports the contention that Tyler Perry and TPS directed spoliation of evidence of sexual harassment and assault by Mr. Perry and TPS in exchange for monetary compensation. Because Mr. Perry does not hold himself out as being sexually interested in men / biological

---

[2]  Defendants originally filed the Motions on October 1, 2025, before this action was assigned to this Court.  On October X, 2025, the Court struck the Motions and ordered Defendants to refile them in compliance with the Standing Order.  On October 22, 2025, Defendants refiled the Motions but noticed an incorrect hearing date.

males, Plaintiff believes that such inquiries, while uncomfortable, are highly relevant to the credibility of Plaintiff's claims in this case. Defendants have not agreed to allow discovery into such matters, even if properly narrow in scope and subject to a protective order.  As such, this dispute will likely result in significant motion practice. Plaintiff also believes discovery motions will be necessary to extract evidence of control by the networks over Mr. Dixon's employment (including but not limited to the terms of the network agreements). Additionally, discovery into Mr. Perry's net worth is required to adjudicate punitive damages, Plaintiff agreed to allow Defendant to defer the production of this information until after a verdict on the first phase of punitive damages.

**Defendant's Position**:

Plaintiff has served discovery that appears aimed at harassing Defendants; not proving his claims.  Plaintiff has served 120 document requests, many are duplicative and others indefensibly overbroad, such as Plaintiff's demand for all of Mr. Perry's phone records since 2018.  Others appear to have been propounded without any foundation and appear unsupported by any good faith basis to believe they will lead to the discovery of potentially admissible evidence.  Plaintiff has also served interrogatories about Mr. Perry's sex life that have no relevance to his claims.  Defendants are still reviewing these requests, which were served earlier this week, and reserve all rights to object and bring a motion for a protective order.  Defendants deny that they engaged in or directed anyone to spoliate any evidence relevant to Plaintiff's action.

**Dispositive motions.** Defendant anticipates filing motions for summary judgment or partial summary judgment.

## V.   Amendment Of Pleadings

Plaintiff incorporates by reference his discussion of fictitious defendants in section I supra. Plaintiff will file his ex-parte to add defendants on or before 90 days from the date of removal per the court's order.

Additionally, Plaintiff may need to amend his claims after some discovery is completed to allege additional causes of action that were heretofore unknown or to address the newly added defendants.

## VI.  Initial Disclosures Pursuant To Fed. R. Civ. P. 26

### Plaintiff's Position

Plaintiff served initial disclosures in compliance with the Judge's orders on October 29, 2025. Plaintiff disclosed names of certain witnesses and alleged other victim's of Tyler Perry's sexual assault.  Plaintiff also disclosed the location of documents, text messages, and other supporting documents for his claims.  Plaintiff also disclosed the lack of insurance coverage.

### Defendant's Position

Defendant has not served initial disclosure and plans on serving them on November 10, 2025 in accordance with Rule 26.

## VII. Discovery

### Plaintiff's Position

Plaintiff has already served RFPS, Special Rogs, and served a depo notice and would like to move discovery along per the Court's rules. Defendants have not responded to discovery or provided availability for the deposition scheduled.

Defendants have not provided Plaintiff their position at the Rule 26 conference on timing of disclosures or cooperation in discovery prior to the 12/8/25 motion to dismiss hearing. Defendants asked if Plaintiff would agree to hold off on discovery until after the motion to dismiss. Plaintiff refused to engage in conduct which was contrary to the Court's standing order.

Plaintiff incorporates his position in *Section IV* above (Discovery disputes) herein to describe the scope of discovery requested (Discovery into other instances of harassment and assault, NDAs, spoilation of evidence, financial disclosures, contracts with networks) as well as a general search of all text messages, pictures, and other data on Tyler Perry's phone and other electronic devices which will corroborate his sexual harassment of Plaintiff and other employees of his. Plaintiff believes that 10 depositions may not be enough given Plaintiff's current estimate of the number of other settlements / allegations of sexual harassment or assault claims against Tyler Perry and TPS that may exist and requests a modification on that issue to 20 depositions.

**Defendant's Position**

Both parties contend that this Court does not have jurisdiction over this action and is thus not the proper tribunal to adjudicate Plaintiff's claims. Accordingly, Defendants believe that it is not prudent and would be premature to engage in discovery until the Court resolves threshold issues concerning jurisdiction and venue.

Furthermore, Defendants have moved to dismiss the entire action and believe that no discovery should take place until the pleadings are settled, particularly because Plaintiff purports to support his discovery requests by relying on California law while Defendants contend that California law is inapplicable to this dispute.

Should this case proceed, in this Court or elsewhere, Defendants intend to serve discovery into Dixon's claims and allegations, including all of his communications or documents concerning Defendants, his relevant employment history, and any information related to his claims for damages. Defendants see no reason to modify any of the Federal Rules of Civil Procedure's default limitations on discovery requests and depositions at this time, but reserve all rights to move for additional discovery with good cause. Plaintiff served his discovery requests and notice of deposition this week and thus Defendants are not yet obligated to provide any response as of the time of this filing. Defendants dispute Plaintiff's contention that they did not provide Plaintiff's with their position regarding the timing of disclosures before the December 8, 2025 hearing. Plaintiff originally provided Defendants with a case schedule that set the initial disclosure deadline for December 15, 2025, Defendants agreed to that deadline in the first draft of this report that they exchanged with Plaintiff on October 28, 2025, and Plaintiff then changed his position. As a result, Defendants will now serve their initial disclosures no later than November 10, 2025, in compliance with Rule 26's deadline.

**A.   Changes Regarding Disclosures Under Rule 26(a)**

There have been no changes regarding disclosures under Rule 26(a).

**B.   Subjects On Which Discovery May Be Needed and Schedule**

The parties anticipate that they will take discovery relating to the claims and defenses set forth in the parties' pleadings. Generally speaking, the scope of discovery will include information pertaining to the personal and professional relationship between Dixon and Defendants, their communications, the parties' communications with any third parties regarding his lawsuit or the subject matter thereof, and any harm, pecuniary or otherwise, that Dixon claims he has suffered.

The parties have discussed and propose the following discovery and broader case schedule.  Where the parties disagree as to a date or deadline, each party's proposal is indicated.

| | |
|---|---|
| Initial Disclosures (Rule 26(a)(1)) | Dec. 15, 2025 |
| Deadline to Join Parties / Amend Pleadings | **Plaintiff's Proposal:**  March 1, 2026<br><br>**Defendants' Proposal:**  November 17, 2025 pursuant to Fed. R. Civ. P. 15(a)(1)(B). |
| Fact Discovery Cut-Off | October 31, 2026 |
| Expert Disclosures (Opening) | November 15, 2026 |
| Rebuttal Expert Disclosures | December 15, 2026 |
| Expert Discovery Cutoff | January 15, 2027 |
| Dispositive Motion Briefing Cutoff | December 22, 2026 |
| Last Date to Hear Dispositive Motions | January 15, 2027 |
| Final Pre-Trial Conference | February 2027 |
| **Trial (jury trial, estimated 5-15 days)** | **March 2027** |

**C.   Electronically Stored Information**

Although the parties anticipate disputes concerning the scope of discovery, they do not anticipate issues arising with regard to electronically stored information and will agree to a suitable ESI protocol.

### D.    Claims of Privilege Or Protection

If privileged material is inadvertently produced, the party in receipt of such material shall promptly return it, and privilege shall not be considered waived.    The parties anticipate setting forth additional provisions regarding the inadvertent production of privileged information in a Stipulated Protective Order, to be submitted to the Magistrate Judge for approval.

### E.    Changes That Should Be Made In Limitations On Discovery

The parties do not currently anticipate the need to expand applicable limitations on written or deposition discovery but reserve the right to petition the Court if it later becomes apparent that good cause exists for further discovery.    The parties agree that expert depositions do not count against the statutory limit of ten depositions per side.

### F.    Any Other Orders Pursuant to Rule 26(c) or Rule 16(b) Or (c)

Certain documents or information that may be produced in discovery in this proceeding may contain confidential information. Accordingly, the parties expect to stipulate to a Protective Order that will be submitted to the Magistrate Judge.

### VIII.    Related Cases Or Proceedings

There are no related cases or proceedings pending before another judge of this Court, or any other court or administrative agency at the time of the filing of this Notice.

**IX.  Relief Sought**

Plaintiff seeks a judgment including economic, non-economic, and punitive damages and whatever other relief is available to him at the time of trial.

Defendants seek a judgment in their favor and against Dixon.

**X.  Interested Parties Or Persons**

Plaintiff filed a Certification and Notice of Interested Parties on October 6, 2025 (Dkt. 15) indicating that the following entities have a connection or interest in the outcome of this litigation:

- Plaintiff Derek Dixon; Plaintiff
- Defendant Tyler Perry; Defendant
- Defendant TPS Production Services, LLC; Defendant
- Defendant And Action, LLC; Defendant

Defendants filed a Certification and Notice of Interested Parties on September 24, 2024 (Dkt. 2) indicating that the following entities have a financial interest in the outcome of this litigation:

- Plaintiff Derek Dixon;
- Plaintiff's counsel, Jonathan Delshad, Law Offices of Jonathan J. Delshad, PC;
- Defendant Tyler Perry;
- Defendant TPS Production Services, LLC, a non-publicly traded Georgia LLC and wholly owned subsidiary of TPS Production Holding, LLC, a non-publicly traded Delaware LLC and wholly owned subsidiary of TPS Holdings Group, LLC, a non-publicly traded Delaware LLC and wholly owned subsidiary of: (1) Tyler

Perry (an individual); and (2) Perry Well Holding Company, a non-publicly traded Georgia corporation;

- Defendant And Action, LLC, which has no active business operations (in any state), was wholly owned by JoyGa Holdings, LLC, a wholly owned subsidiary of: (1) Tyler Perry (an individual); and (2) Perry Well Holding Company, a non-publicly traded Georgia corporation, before And Action, LLC's dissolution in 2023;

- Alex Spiro, Quinn Emanuel Urquhart & Sullivan, LLP;

- Matthew A. Boyd, Tucker Ellis, LLP;

- Ndubisi A. Ezeolu, Tucker Ellis, LLP;

- Michael T. Lifrak, Quinn Emanuel Urquhart & Sullivan, LLP;

- Mari F. Henderson, Quinn Emanuel Urquhart & Sullivan, LLP; and

- Alex Bergjans, Quinn Emanuel Urquhart & Sullivan, LLP.

## XII. Jury Demand

All parties demand a jury trial. The parties anticipate that 5-15 Court days will be needed for trial but reserve the right to amend the estimate based on information learned in discovery.

## XIII.    Settlement Efforts

The parties have not engaged in any productive settlement discussions and no settlement discussions are currently occurring.

Given the substance of the claims, which are wholly denied, Defendants do not anticipate that this matter will settle prior to trial.

## XIV. Complexity Of Case

The parties agree that this case is not complex and reference to the *Manual on Complex Litigation* is unnecessary.

## XVI. Unusual Legal Issues

1    None at this time.

2    **XVII.    Severance, Bifurcation, Or Other Ordering Of Proof**

3    None at this time.  Defendants reserve the right to request

4    bifurcation of the liability and punitive damages phases of trial

5    at the appropriate time.

6    **XVIII. ECF**

7    Jonathan Delshad, lead counsel for Plaintiff, is a registered

8    ECF user. His email address of record is jdelshad@delshadlegal.com.

9    Matthew A. Boyd, lead counsel for Defendants, is a registered

10   ECF user.  His email address of record is

11   matthew.boyd@tuckerellis.com.

Dated: October 31, 2025    **LAW OFFICES OF JONATHAN J. DELSHAD**

By: _____ */s*
Jonathan J. Delshad (SBN 246176)
jdelshad@delshadlegal.com
1663 Sawtelle Blvd., Ste 220
Los Angeles, CA 90025
Tel: (424) 255-8376
Fax: (424) 256-7899
*Attorneys for Plaintiff*

Dated: October 31, 2025    **TUCKER ELLIS, LLP**

By: _____ */s*
Matthew A. Boyd (admitted *pro hac vice*)
matthew.boyd@tuckerellis.com
Ndubisi A. Ezeolu (Bar No. 256834)
ndubisi.ezeolu@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071
Tel: 213.430.3400
Fax: 213.430.3409
*Attorneys for Defendants*

JOINT RULE 26(F) REPORT

**DECLARATION REGARDING CONCURRENCE**

Pursuant to Local Rule 5-4.3.4(a)(2), the undersigned hereby attests that counsel for Defendants has concurred in the filing of this document.

Dated: October 31, 2025          **LAW OFFICES OF JONATHAN J. DELSHAD**

By: /s_____
Jonathan J. Delshad (SBN 246176)
jdelshad@delshadlegal.com
1663 Sawtelle Blvd., Ste 220
Los Angeles, CA 90025
Tel: (424) 255-8376
Fax: (424) 256-7899
*Attorneys for Plaintiff*